UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD LILLY,

                              Plaintiff,

          v.

LEWISTON-PORTER CENTRAL SCHOOL DISTRICT,
DAVID SCHAUBERT, LOUIS PALMERI, ROBERT
LAUB, and JAMES MEZHIR,

                              Defendants.
_____

DAVID SCHAUBERT, LOUIS PALMERI,
ROBERT LAUB, and JAMES MEZHIR,

                              Cross Claimants,

          v.

LEWISTON-PORTER CENTRAL SCHOOL DISTRICT,

                              Cross Defendant.
_____

**REPORT
and
RECOMMENDATION**

**10-CV-00548S(F)**


APPEARANCES:          RICHARD H. WYSSLING, ESQ.
                      Attorney for Plaintiff
                      375 Linwood Avenue
                      Buffalo, New York 14209


                      HODGSON RUSS LLP
                      Attorneys for Defendant and Cross Defendant
                       Lewiston-Porter Central School District
                      KEVIN M. KEARNEY, and
                      KARL W. KRISTOFF, of Counsel
                      The Guaranty Building, Suite 100
                      140 Pearl Street
                      Buffalo, New York 14202-4040

COLUCCI & GALLAGHER, P.C.
Attorneys for Defendants and Cross Claimants
  Schaubert, Palmeri, Laub, and Mezhir
MICHAEL J. KEANE, and
TODD C. BUSHWAY, of Counsel
2000 Liberty Building
424 Main Street
Buffalo, New York 14202-3695

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on August 31, 2010 for pretrial matters, including report and recommendation on dispositive motions. The matter is presently before the court on motions to dismiss the Complaint, filed by Defendant Lewiston-Porter Central School District on August 23, 2010 (Doc. No. 11), and by Defendants Schaubert, Palmeri, Laub, and Mezhir on September 13, 2010 (Doc. No. 14).

## BACKGROUND

Plaintiff Edward Lilly ("Plaintiff" or "Lilly"), commenced this civil rights action on June 30, 2010, challenging his removal from the Lewiston-Porter Central School District Board of Education ("the School Board"), by Defendants School Board members David Schaubert ("Schaubert"), Louis Palmeri ("Palmeri"), Robert Laub ("Laub"), and James Mezhir ("Mezhir") (together, "Defendant School Board Members"), and Lewiston-Porter Central School District ("the School District") ("Defendants"). Plaintiff alleges Defendants, acting under color of state law, illegally removed Plaintiff from the School Board to retaliate against Plaintiff whose votes on School Board issues often differed from those of the majority, *i.e.*, Schaubert, Palmeri, Laub and Mezhir. After being

reinstated to the School Board, following appeal to the New York State Commissioner of Education, Plaintiff sought re-election to the School Board in 2009 and 2010, at which times Plaintiff alleges Defendants disseminated to registered School District voters false statements about Plaintiff to ruin Plaintiff's chances of re-election. Plaintiff alleges the Defendant School Board Members' actions violated Plaintiff's rights under 42 U.S.C. § 1983 (First Claim), and the First Amendment (Second Claim), and constituted malicious prosecution (Third Claim"), and intentional infliction of emotional distress (Fourth Claim); Plaintiff also seeks to hold Defendant School District vicariously liable for the alleged unlawful actions of the Defendant School Board Members under a theory of *respondeat superior* (Fifth Claim).

On August 12, 2010, Defendant School Board Members filed an answer (Doc. No. 8), asserting a cross-claim against Defendant School District, for indemnification. On August 23, 2010, Defendant School District filed a motion to dismiss the Complaint (Doc. No. 11) ("School District's motion"), supported by the attached Memorandum of Law in Support of the Lewiston-Porter Central School District's Motion to Dismiss the Complaint (Doc. No. 11-2) ("School District's Memorandum"), the Declaration of Kevin M. Kearney, Esq. in Support of Motion to Dismiss (Doc. No. 11-3) ("Kearney Declaration"), and exhibits A through F ("School District's Exh(s). __"). On September 13, 2010, Defendant School Board Members filed a cross-motion to dismiss (Doc. No. 14) ("Defendant School Board Members' motion"), supported by the attached Memorandum of Law in Support of Defendants' Cross Motion to Dismiss Plaintiff's Complaint (Doc. No. 14-2) ("Defendant School Board Members' Memorandum"), the Attorney Affidavit of Todd C. Bushway, Esq. (Doc. No. 14-3) ("Bushway Affidavit"), and

exhibits A through L ("Defendant School Board Members' Exh(s). ___").

In opposition to both the School District's motion and the Defendant School Board Members' motion ("the motions"), Plaintiff filed, on October 7, 2010, a Memorandum of Law in Response to Motion to Dismiss (Doc. No. 16) ("Plaintiff's Memorandum"), the Affidavit of Edward Lilly (Doc. No. 16-1) ("Lilly Affidavit"), with attached exhibits A and B ("Plaintiff's Exh(s). ___"). Filed on October 18, 2010, in further support of the motions were the Reply Memorandum of Law in Support of the Lewiston-Porter Central School District's Motion to Dismiss the Complaint (Doc. No. 17) ("School District's Reply"), and the Reply Memorandum of Law in Support of Defendants' Cross Motion to Dismiss Plaintiff's Complaint (Doc. No. 18 ("Defendant School Board Members' Reply"). Oral argument was deemed unnecessary.

Based on the following, Defendant School District's motion should be GRANTED in part and DENIED in part; Defendant School Board Members' cross-motion should be GRANTED in part and DENIED in part.


## **FACTS**[1]

Plaintiff was first elected to the Lewiston-Porter Central School District Board of Education ("School Board"), in May 1997, for a three-year term. Each three-year School Board term commenced in the year of election on July 1 and ended three years later on June 30. Plaintiff was subsequently elected to three additional and consecutive three-year terms, commencing in July 2000, 2003 and 2006.

---

[1] Taken from the pleadings and motion papers filed in the action.

Enacted in 2005, New York Education Law ("N.Y. Educ. Law")[2] § 2102-a[1] ("§ 2102-a") requires, as relevant to the instant case, that all school board members elected or appointed to a term beginning on or after July 1, 2005 shall, "within the first year of his or her term, complete a minimum of six hours of training on the financial oversight, accountability and fiduciary responsibilities of a school board member." N.Y. Educ. Law § 2102-a[1] ("financial oversight training"). Once a board member has completed the financial oversight training, no board member will be required to repeat the training. *Id*. In 2006, the School Board approved School Board District Policy 2231 ("Board Policy 2331"), which made School Board members subject to the financial oversight training requirements of § 2102-a. Upon his re-election to a fourth term on the School Board on May 16, 2006, commenced, pursuant to state law, on July 1, 2006, Plaintiff was required under both § 2102-a and Board Policy 2231 to complete the financial oversight training. Plaintiff does not dispute being aware of the financial oversight training requirement as applicable to him.

Throughout his tenure on the School Board, Plaintiff's opinions and views often clashed with those of other School Board members, including School Board president Schaubert, vice-president Palmeri, and members Laub and Mezhir, all sued as defendants in this action. Because another School Board member, Scott A. Stepien ("Stepien"), often agreed with Plaintiff, most of the School Board's actions were based on votes of 5-2 or 4-2.[3]

---

[2] Unless otherwise noted, references to "N.Y. Educ. Law" are to McKinney 2007.

[3] The seventh School Board member, Leonard Palumbo ("Palumbo"), usually voted in accordance with the majority, but had sporadic attendance at School Board meetings and is not sued in this action. Palumbo's compliance status with § 2102-a is neither in the record nor discussed.

Among the numerous disagreements between Plaintiff and School Board Member Defendants were matters of School District finances, the School District's policy regarding faculty drug abuse, access to polling and voting records related to School Board elections, and the awarding of a two-million dollar no-bid job contract to a Syracuse architectural firm to design capital improvements for School District facilities. Several of the disagreements, including the "no-bid" architectural contract award, were widely publicized in the local media.

At a regularly-scheduled School Board meeting on June 19, 2007, Plaintiff and Stepien were each served with a Statement of Charge of Official Misconduct ("Statement of Charge"),[4] advising that pursuant to N.Y. Educ. Law § 1709[18] ("§ 1709[18]"), Plaintiff and Stepien had committed official misconduct by, either willfully or by neglectfully, failing to timely complete the requisite financial oversight training within one year of commencing their 2006 School Board terms in violation of § 2102-a and Board Policy 2331.[5]  By a vote of 4-2, the School Board passed a resolution ("the

_____

[4] Defendant School Board Members' Exh. C.  According to Plaintiff, the Statement of Charge was "issued" at the June 19, 2007 meeting by Schaubert, Complaint ¶ 4, although whether the remaining School Board members participated in formulating the Statement of Charge, or whether its issuance was put to a vote, is not clear.

[5] N.Y. Educ. Law § 1709[18] provides that the

board of education of every union free school district shall have power, and it shall be its duty: * * * To remove any member of their board for official misconduct.  But a written copy of all charges made of such misconduct shall be served upon him at least 10 days before the time appointed for a hearing of the same; and he shall be allowed a full and fair opportunity to refute such charges before removal.

No other procedures pertaining to the removal of a board member by a school board for official misconduct are provided in either New York's statutes or regulations.

Although Defendant School Board Members serve not on a board of education of a union free school district, but on a central school district school board, N.Y. Educ. Law § 1805 provides that "[a]ll central school districts shall have the same powers and be subject to the same limitations that are now conferred

Resolution")[6] to conduct a hearing on the charges on June 30, 2007, appointing Karl W. Kristoff, Esq. ("Kristoff"), to preside as hearing officer over the matter. All four Defendant School Board Members voted in favor of the hearing, Plaintiff and Stepien voted against the hearing, and Palumbo was not present.

Following the June 19, 2007 meeting, Plaintiff attempted to register for the financial oversight training through an on-line course offered through the School District. Plaintiff, however, was advised by School District Clerk Debbie Sherman ("Sherman"), allegedly acting at the behest of Schaubert, that Sherman could not assist Plaintiff in registering for the on-line course. Plaintiff maintains, and Defendants do not dispute, that had Plaintiff been permitted to register for the on-line course, Plaintiff would have timely completed the financial oversight training. Lilly Affidavit ¶ 5. Plaintiff maintains that other School Board members had previously successfully registered for the same financial oversight on-line training course through the New York State School Board Association ("NYSSBA"), and the School District.

Because the financial oversight training was also available through the Board of Cooperative Educational Services of Orleans and Niagara Counties ("BOCES"), of which Plaintiff was also a board member, Plaintiff attempted to register for the next available on-line course offered by BOCES, requesting assistance from BOCES Superintendent Dr. Clark Godshall ("Dr. Godshall"). In a June 20, 2007 e-mail message

---

or imposed by law upon union free school districts as provided by this chapter." Accordingly, Defendant School Board Members were authorized, pursuant to N.Y. Educ. Law § 1805, to seek Plaintiff's removal for official misconduct pursuant to § 1709[18].

[6] Defendant School Board Members' Exh. D. Presumably, Palumbo, who did not sign the Resolution, was not present.

to Dr. Godshall, Schaubert stated "As for the charges against Mr. Lilly and Mr. Stepien that were voted on last night, I know Mr. Lilly is tight with BOCES but all I can ask is 'don't do them any favors.' Let the legal process work as it is written." Complaint ¶ 18; School District's Exh. D. Plaintiff maintains that Schaubert's e-mail message was intended to persuade Dr. Godshall to deny Plaintiff the opportunity to take the required financial oversight training prior to July 1, 2007. Dr. Godshall, however, did attempt to register Plaintiff for the on-line financial oversight training course offered through NYSSBA but, according to Plaintiff, was advised by NYSSBA Executive Director Kremer ("Kremer"),[7] that Schaubert had also told Kremer not to permit Plaintiff or Stepien to register for the course. Dr. Godshall did, nonetheless, successfully register Plaintiff for the next financial oversight training course scheduled for July 28, 2007, which was sponsored by an agency other than NYSBBA.

On June 25, 2007, Plaintiff and Stepien commenced in New York Supreme Court, Niagara County, a special proceeding pursuant to New York Civil Practice Law and Rules ("N.Y. C.P.L.R."),[8] § 7803[3] ("Article 78 proceeding"), by filing an Order to Show Cause[9] directing Defendant School Board Members, School Board attorney F. Warren Kahn ("Kahn"), Kristoff and the School Board to appear and explain why an order should not be entered nullifying and striking the Statement of Charge and the Resolutions adopted at the June 19, 2007 School Board meeting. According to Defendant School District, New York Supreme Court Justice Frank Caruso, to whom

---

[7] Kremer's first name is not stated in the record.

[8] Unless otherwise indicated, references to "N.Y. C.P.L.R." are to McKinney 2003.

[9] School District's Exh. H.

the matter was assigned, refused to sign the Order to Show Cause. Bushway Affidavit ¶ 10. Why the special proceeding was not pursued is not explained in the record.

On June 28, 2007, Plaintiff filed a Petition ("Petition")[10] to New York Commissioner of Education Richard P. Mills ("Commissioner" or "Mills"), against the School Board, the Defendant School Board Members, and School Board attorney Kahn, seeking a stay of the June 30, 2007 School Board meeting, the subject of which was the pending Statement of Charge, alleging the Statement of Charge was premature because Plaintiff's first year following enactment of § 2102-a did not end until June 30, 2007, and advising that Plaintiff was then enrolled in a financial oversight training session scheduled for July 28, 2007. The Petition also sought the removal from the School Board of Laub and Mezhir whose participation in the procedure to remove Plaintiff from the School Board was allegedly in bad faith. By letter to Plaintiff dated June 29, 2007,[11] State Education Department Appeals Coordinator Mary L. Gammon advised Plaintiff that the Commissioner would not be issuing the requested stay.

As such, the School Board considered the Statement of Charge at a special School Board meeting on June 30, 2007, before Hearing Officer Richard F. Griffin ("Griffin").[12] Six School Board members were present at the hearing, including Plaintiff, Stepien, Schaubert, Palmeri, Laub and Mezhir, Plaintiff's Affidavit ¶ 17, which commenced at 1:30 P.M. and continued until 10:30 P.M. The Statement of Charge was

---

[10] Defendant School Board Members' Exh. E.

[11] Defendant School Board Members' Exh. G.

[12] The record does not explain how Griffin came to be appointed as the presiding hearing officer, when, at the June 19, 2007 School Board meeting, the Board voted 4-2 to appoint Kristoff as the hearing officer.

9

considered by the School Board in an executive session that was closed to the public, during which the four Defendant School Board Members, Schaubert, Palmeri, Laub, and Mezhir, signed a statement finding Plaintiff and Stepien in violation of § 2102-a and Board Policy 2331, and calling for their removal from the School Board. Neither Plaintiff nor Stepien signed the statement. The statement, as adopted in the executive session, was never subjected to a public vote by the School Board, and whether such a public vote was legally required under state law is disputed by the parties to this action. Plaintiff contends a public vote was required, a position Defendant School Board Members oppose.

At midnight on June 30, 2007, less than two hours after the special School Board meeting ended, the School Board terms of both Schaubert and Palmeri, who had not sought re-election to the School Board, expired and Schaubert and Palmeri ceased to be School Board members by operation of the end of their respective three-year terms. On July 28, 2007, Plaintiff completed the financial oversight training class for which Dr. Godshall had registered Plaintiff, and which was sponsored by an agency other than NYSBBA.

On July 30, 2007, Plaintiff appealed to the Commissioner the School Board's decision to remove Plaintiff from the School Board. On September 25, 2007, Robert Weller ("Weller"), and Bonnie Gifford ("Gifford"), were appointed to the School Board,[13]

---

[13]  The procedure by which Weller and Gifford were appointed to the School Board is neither discussed in the record, nor challenged by Plaintiff. The court notes that N.Y. Educ. Law § 1709[17] authorizes a school board to

> fill any vacancy which may occur in said board by reason of the death, resignation, removal from office or from the school district, or refusal to serve, of any member or officer of said board; and the person so appointed in the place of any such member of the board shall hold his office until

filling the seats previously held by Plaintiff and Stepien.

On March 25, 2008, the Commissioner sustained Plaintiff's appeal, finding that the Statement of Charge was premature given that Plaintiff had until July 2, 2007, to complete the financial oversight training, such that the claim was not ripe for review. Commissioner's Decision[14] at 4. The Commissioner accordingly ordered Plaintiff and Stepien be reinstated to the School Board, and Gifford and Weller be removed from the School Board. *Id.* Plaintiff and Stepien then served the remainder of their School Board terms, both of which expired on June 30, 2009.

On June 30, 2008, Plaintiff commenced in New York Supreme Court, Niagara County, an action against only Schaubert, "as a private citizen," alleging claims for libel and slander, in violation of New York common law, for which Plaintiff sought money damages.[15] On September 8, 2008, Plaintiff voluntarily discontinued the action based on the fact that Schaubert was then being sued by Stepien in federal court.[16]

Plaintiff sought re-election to the School Board in May 2009, at which time Defendant School Board Members, including Schaubert and Palmeri who were then no longer School Board members, produced and distributed to registered voters of the School District flyers advising voters not to vote for Plaintiff. Plaintiff did not win re-

the next regular school district election. The person elected to fill such vacancy shall take office immediately upon filing of his official oath of office with the district clerk.

N.Y. Educ. Law § 1709[17].

[14] Defendant School Board Members' Exh. I; School District's Exh. F.

[15] School District's Exh. D.

[16] School District's Exh. E.

election to the School Board in 2009.

On February 23, 2010, United States Magistrate Judge Hugh B. Scott ("Judge Scott"), issued a Report and Recommendation ("R&R"), recommending summary judgment be granted in favor of the defendants in a civil rights action commenced on June 30, 2008, by Stepien against Defendant School Board Members and the School District's attorneys, *Stepien v. Schaubert*, 08-CV-487A ("*Stepien*"), raising claims similar to those Plaintiff raises in the instant action. *Stepien v. Schaubert*, 2010 WL 1875763 (W.D.N.Y. Feb. 23, 2010) ("Judge Scott's R&R"). On May 11, 2010, District Judge Richard J. Arcara adopted Judge Scott's R&R, and the file was closed. Judge Arcara's decision in *Stepien's* case is presently on appeal before the Second Circuit Court of Appeals.

Plaintiff again sought re-election to the School Board in May 2010, at which time alleged false postcards, flyers and an internet website were created by Defendant School Board Members, including former members Schaubert and Palmeri, advising School District voters not to vote for Plaintiff. School Board Attorney Khan wrote letters to voters within the School District advising against voting for Plaintiff, who again lost his election bid.

## DISCUSSION

In this action, both School District and Defendant School Board Members have filed motions seeking to dismiss the Complaint. The School District argues in support of dismissal that (1) the School District is absolutely immune from liability because the School District's actions at issue were quasi-judicial and legislative, School District's

Memorandum at 7-13; (2) Plaintiff failed to comply with statutory notice of claim requirements with regard to Plaintiff's Third and Fourth Claims, based on state law, *i.e.*, New York Educ. Law § 3813[2], and New York Gen. Mun. Law §§ 50-e and 50-i, *id.* at 13-14; and (3) Plaintiff's state law claims are time-barred, *id.* 14-15. Defendant School Board Members argue that (1) Plaintiff has failed to allege the deprivation of any property right supporting a denial of due process claim, Defendant School Board Members' Memorandum at 4-8; (2) Defendant School Board Members' actions at issue are protected by absolute immunity, *id.* at 9-11; (3) or by qualified immunity, *id.* at 12-14; and (4) Plaintiff's state law claims are time-barred, *id.* at 15-16. In opposition to the motions, Plaintiff argues that because the vote to remove Plaintiff from the School Board was not taken in public, the vote was in violation of New York's Open Meetings Law, N.Y. Public Officers Law ("N.Y. Pub. Off. Law")[17] § 103 ("Open Meetings Law"), such that Defendants' actions in taking the vote were without authority and thus are neither absolutely nor qualifiedly immune from suit.[18] Plaintiff's Memorandum at 10-12.

In further support of the School District's motion, the School District argues that judicial or quasi-judicial proceedings are specifically exempted from the Open Meetings

---

[17] Unless otherwise indicated, references to "N.Y. Pub. Off. Law" are to McKinney 2008.

[18] Plaintiff does not specifically allege a violation of the Open Meetings Law as a separate state law claim, despite the fact that the Open Meetings Law provides that a person aggrieved by violation of the Open Meetings Law has standing to enforce the Open Meetings Law against a public body by a proceeding commenced pursuant to N.Y. Civ. Prac. L. & R. Art. 78, N.Y. Pub. Off. Law § 107[1]. Further, upon determining that the Open Meetings Law has been violated, "the court shall have the power, in its discretion, upon good cause shown, to declare that the public body violated [Article 78] and/or declare the action taken in relation to such violation void, in whole or in part, without prejudice to reconsideration in compliance with [Article 78]." N.Y. Pub. Off. Law § 107[1]. Not only is such action or proceeding subject to a four month statute of limitation set forth in N.Y. Civ. Prac. L. & R. 217[1] (establishing four-month limitations period for legal proceedings against a body or officer), but district courts are without subject matter jurisdiction over such a claim. *McNamara v. Kaye*, 360 Fed.Appx. 177, 177 (2d Cir. 2009) (dismissing Article 78 claim for lack of subject matter jurisdiction).

Law and, thus, as the School Board had acted in a quasi-judicial capacity, it was not required under the Open Meetings Law to vote in public to remove Plaintiff, School Board's Reply at 1, that the School Board's decision was not legislative, but was administrative, addressing a personnel matter, and thus did not constitute public business subject to the Open Meetings Law, *id.* at 1-2, and, with regard to Plaintiff's state law claims, Plaintiff does not dispute that he failed to file the requisite notice of claim and that therefore such claims are time-barred, *id.* at 3. Defendant School Board Members, argue in further support of their motion that the vote to remove Plaintiff from the School Board was taken while the School Board was acting in a legislative capacity and, thus, Defendant School Board Members are absolutely immune from legal challenge on that ground, Defendant School Board Members' Reply at 2-6, that Plaintiff has failed to respond in opposition to Defendant School Board Members' arguments that Plaintiff has not alleged a deprivation of any substantive or procedural constitutional right or that Defendants are entitled to qualified immunity, *id.* at 6-7, and that Plaintiff's state law claims are barred by Plaintiff's failure to comply with New York's notice of claim requirements, *id.* at 7.

## 1.    Motion to Dismiss

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as

true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  Two recent Supreme Court cases require application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly*, 550 U.S. at 570.  Further, the court is obligated to liberally construe a complaint alleging a § 1983 claim, even though not filed *pro se*. *Leonard Partnership v. Town of Chenango*, 779 F.Supp. 223, 234 (N.D.N.Y. 1991) (construing allegation by plaintiff, represented by counsel, that defendant town denied building permit as due process violation even though § 1983 was not mentioned in the complaint where such construction did not prejudice town given that defendant itself

had construed complaint as based on § 1983 and accordingly addressed claim).

The court initially addresses Defendants' reliance on matters outside the pleadings insofar as Defendants seek to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim for which relief can be granted. By submitting numerous exhibits in support of the motion to dismiss under Rule 12(b)(6) for failure to state a claim, Defendants essentially request the court to consider matters outside the pleadings. Significantly, if, on a motion to dismiss under Rule 12(b)(6), "matters outside the pleadings are presented to and <u>not</u> <u>excluded</u> <u>by</u> <u>the</u> <u>court</u>, the motion must be treated as one for summary judgment under [Fed.R.Civ.P.] Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d) (underlining added). As such, a district court may convert a motion to dismiss for failure to state a claim "into a motion for summary judgment when the motion presents matters outside the pleadings, but the rule requires that the court give 'sufficient notice to an opposing party and an opportunity for that party to respond.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)).

In the instant case, the court finds that of the multiple exhibits submitted in support of the parties' respective positions on the motion to dismiss, only a few exhibits are helpful to resolving whether there is sufficient merit to Plaintiff's claims, including, *e.g.*, the Statement of Charge, Defendant School Board Members' Exh. D; the Resolution, Defendant School Board Members' Exh. E; and the Commissioner's Decision, Defendant School Board Members' Exh. I, School District's Exh. F. Insofar as Judge Scott's R&R, adopted by Judge Arcara, is a judicial decision, *Stepien*, 2010 WL

1875763 (W.D.N.Y. Feb. 23, 2010), the court may take judicial notice of it. *See New York ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 199 (2d Cir. 2001) (taking judicial notice of district court's decision in related proceeding). Moreover, those exhibits that are helpful and considered by the court have all been incorporated by reference into the Complaint. As such, the court need not convert Defendants' motions for failure to state a claim, to motions for summary judgment. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (documents incorporated by reference may be considered on a motion to dismiss without converting to summary judgment). Nor does the presentation to the court of matters outside the pleadings, but excluded from the court's consideration, require converting a motion to dismiss to one for summary judgment. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 522 (2d Cir. 2006) (holding district court was not required to convert motion to summary judgment where court did not consider deposition excerpts but, rather, relied only upon pleadings and contract incorporated by reference into the pleadings). The court therefore considers whether the Complaint should be dismissed pursuant to Rule 12(b)(6) for failing to state a claim for which relief can be granted.

## 2.     Civil Rights Claims

Plaintiff's first two claims for relief allege deprivation of civil rights under 42 U.S.C. § 1983 (First Claim), and deprivation of First Amendment rights (Second Claim). The School District characterizes Plaintiff's Second Claim as brought "directly" under the First Amendment, School Board Memorandum at 3, and Plaintiff does not dispute this assertion.

Section 1983, "allows an action against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Patterson v. County of Oneida*, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, "'is not itself a source of substantive rights.'" *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'. . . ." *Id*. The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Taylor*, 466 U.S. 635, 640 (1980)).

In the instant action, it is undisputed that Defendant's removal of Plaintiff from the School Board, as a result of the Defendant School Board Members' adoption of the Statement of Charge against Plaintiff, was an action taken pursuant to state law, specifically, N.Y. Educ. Law § 1709[18]. Thus, for the purposes of alleging civil rights claims, the court finds Defendants acted under color of state law in causing Plaintiffs' removal from the School Board. The remaining relevant inquiry is whether Plaintiff's removal from the School Board and the statements allegedly made by Defendant School Board Members in connection with Plaintiff's re-election bids in 2009 and 2010 deprived Plaintiff of any federal constitutional right actionable, as Plaintiff's First Claim alleges, pursuant to § 1983. As discussed, *infra*, the court finds the Complaint sufficiently states Fourteenth Amendment denial of due process claims based on deprivation of a protected liberty interest and a First Amendment retaliation claim, as

well as a First Amendment free speech violation as alleged in Plaintiff's Second Claim.

## A.    Fourteenth Amendment

Plaintiff's failure to specifically and more accurately denominate any of his allegations as a procedural due process claim is not fatal as the court is required to liberally construe civil rights complaints, regardless of whether a plaintiff is represented by counsel. *Leonard Partnership*, 779 F.Supp. at 234 (district court considered claim that defendant violated Fourteenth Amendment due process rights of plaintiff, who was represented by legal counsel, as based on § 1983 even though complaint was devoid of any reference to § 1983, given that defendant had construed claim as based on § 1983 and, thus, would not be prejudiced by such construction).  Significantly, in the instant case, that Defendant School Board Members have construed the Complaint as alleging a violation of due process under § 1983 is established by Defendant School Board Members' discussion in support of their motion that Plaintiff cannot establish any § 1983 due process violation.  *See* Defendant School Board Members' Memorandum at 4-8 (arguing that Plaintiff had no "constitutionally protected right in holding the elected office of a school board member," such that Plaintiff's removal from the School Board was not a deprivation of a property right requiring due process).  As such, the court's construction of the Complaint as alleging deprivation of due process in violation of the Fourteenth Amendment will result in no prejudice to Defendants and will further the interest of justice.  Fed.R.Civ.P. 1 (the Federal Rules of Civil Procedure "shall be construed and administered to secure the just . . . determination of every action. . . . "); Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice.").

As relevant, the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1.  A due process violation can be established by demonstrating that state action deprived Plaintiff of a property or liberty interest protected by the Fourteenth Amendment.  *Velez*, 401 F.3d at 85.  As discussed, Discussion, *infra*, at 20-27, the Complaint does not state a claim for deprivation of a protected property interest, but does state a claim for deprivation of a protected liberty interest, established by New York law, based on a combination of Defendant School Board Members' conduct in removing Plaintiff from his duly elected school board position, predicated on baseless charges, and without due process.

Although property interests are constitutionally protected, they generally are not constitutionally established but, rather, are created, and their dimensions defined, by existing rules stemming from such independent sources as state laws or rules.  *Velez*, 401 F.3d at 85.  "Thus, only where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise."  *Id*.  Because New York law provides that elected school board officials are entitled to serve their elected terms and can only be removed for cause, *id*. (citing *Maldonado v. Crew*, 653 N.Y.S.2d 596 (1st Dep't. 1997) (affirming order enjoining New York City school chancellor from suspending community school board members without cause)), it at first appears that Plaintiff has a constitutionally protected property interest, created by applicable New York law, in his membership on the School Board for the balance of his three-year term commencing July 1, 2006.  *Id*. at 85-86.  It is, however, settled that "'the nature of the relation of a public officer to the public is inconsistent with

either a property or a contract right.'" *Velez*, 401 F.3d at 86 (quoting *Taylor and Marshall v. Beckham*, 178 U.S. 548, 577 (1900).  Plaintiff thus had no constitutionally protected property right in his position as an elected School Board member.  Plaintiff nevertheless does have a protected liberty interest in maintaining his School Board position for the duration of his elected term particularly, as in this case, the period from his removal on June 30, 2007 to March 25, 2008, when he was reinstated to the School Board by action of the Commissioner.  *See Velez*, 401 F.3d at 90 (holding New York City community school board member who was removed by chancellor after other school board members falsely charged plaintiff with harassment and terrorism stated claim for deprivation of protected liberty interest without due process of law).

The elements of a deprivation of a protected liberty interest, commonly referred to as a "stigma plus" claim, *Velez*, 401 F.3d at 87, include (1) utterance of a statement about Plaintiff injurious to Plaintiff's reputation, capable of being proved false; and (2) some tangible and material state-imposed burden.  *Id.* (citing *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, 538 U.S. 1 (2003)).  In other words, the defamatory statement must be sufficiently public to create or threaten a stigma to Plaintiff, such that a similar or identical statement made only in private to Plaintiff would not impair any protected liberty interest held by Plaintiff actionable pursuant to § 1983.  *Velez*, 401 F.3d at 87.  A defamatory statement by itself, although an actionable tort under the law of most states, is not a constitutional deprivation absent a "plus" element imposed by the defendant.  *Id*.  The "plus" factor "must be a specific and adverse action clearly restricting the plaintiff's liberty – for example, the loss of employment." *Id*. at 87-88 (citing *Siegert v. Gilley*, 500 U.S. 226,

233 (1991)).

"In a typical 'stigma-plus' case, the stigmatizing statement originates from the same state actor who imposes the 'plus,' such as when a government employer defames an employee in the course of terminating that employee." *Velez*, 401 F.3d at 88 (citing *Board of Regents v. Roth*, 408 U.S. 654 (1972), and *Donato v. Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d 623, 630 (2d Cir. 1996)). Nevertheless, "perfect parity in the origin of both the 'stigma' and the 'plus' is not required to state the infringement of a 'stigma-plus' liberty interest." *Velez*, 401 F.3d at 89. Nor must the 'stigma' and the 'plus' be imposed at precisely the same time. *Id*. (citing *Ulrich v. City and County of San Francisco*, 308 F.3d 322, 335 (2d Cir. 2004) (noting successful stigma-plus claims require rough temporal proximity between the "stigma" and "plus" factors, but not actual contemporaneity)). Where, however, the "stigma" and the "plus" are not imposed by the same actor, "a stigma-plus claim may be valid if the 'stigma' and 'plus' were connected." *Id*. at 89 (citing *Marrero v. City of Hialeah*, 625 F.2d 499, 519-20 (5th Cir. 1980)). The claimed "stigma" and "plus" are sufficiently proximate

> where (1) the stigma and plus would, to a reasonable observer, appear connected - for example, due to their order of occurrence, *see Ulrich*, 308 F.3d at 983, or their origin, *see McGhee*, 639 F.2d at 643 - and (2) the actor imposing the plus adopted (explicitly or implicitly) those statements in doing so. There is no rigid requirement, therefore, that both the 'stigma' and the 'plus' must issue from the same governmental actor or at the same time.

*Velez*, 401 F.3d at 89.

In the instant case, Plaintiff's allegations that the stigmatizing statements Defendant School Board Members made in connection with Plaintiff's removal from the School Board, including, importantly, the adoption of the Statement of Charge accusing

Plaintiff of "official misconduct," initiated by Defendant Schaubert and approved by Defendant School Board Members, and subsequently voting to remove Plaintiff from the School Board based on the finding that Plaintiff had, in fact, committed official misconduct by failing to complete the required financial oversight training, adequately state a denial of due process claim that Defendants imposed both a "stigma" – damage to Plaintiff's reputation,[19] and a "plus" – the removal of Plaintiff from his duly elected School Board position based on the same alleged official misconduct. *See Velez*, 401 F.3d at 90 (holding chancellor's removal of community school board member based on other board members' public statements falsely charging plaintiff with harassment and terrorism stated a procedural dues process claim for deprivation of "stigma-plus" liberty interest).

Plaintiff also asserts that he is not challenging Defendants' conduct during the hearing, including the School Board's adopting of the Statement of Charge, or Hearing Officer Griffin's taking testimony from witnesses and making a record in support of the charges but, rather, that Plaintiff challenges the School Board's failure to take a vote upon Plaintiff's removal in an open session, as required by state law, and in subsequently having Kahn distribute notices of removal[20] upon instruction by the School

---

[19] Although not directly stated in the record, that the reason for Plaintiff's removal from the School Board – failure to timely complete the financial oversight training – was made public is implied by Schaubert's June 20, 2007 e-mail to Dr. Godshall, advising Dr. Godshall that, "As for the charges against Mr. Lilly and Mr. Stepien that were voted on last night, I know Mr. Lilly is tight with BOCES but all I can ask is 'don't do them any favors.' Let the legal process work as it is written," School District's Exh. D, as well as by the fact that following the removal of Plaintiff and Stepien, Weller and Gifford were appointed to the then vacant School Board seats. Schaubert also contracted Kremer to prevent Plaintiff's enrollment in the NYSSBA training course.

[20] The record does not indicate to whom Khan allegedly sent out the notices of removal. Based on Plaintiff's allegations, it is a fair inference the notices were sent to other public officials and, as likely, the media as a means of informing interested resident of the School District.

Board but without authority to do so based on the improperly conducted vote. Plaintiff's Memorandum at 6. The court, however, finds such allegations overlook the threshold question whether Plaintiff's failure to timely complete the financial oversight training as alleged in the Statement of Charge, required by § 2102-a, constitutes official misconduct under New York law to support the Statement of Charge, thereby providing a further, and more substantive, ground upon which Plaintiff's "stigma-plus" liberty interest in continuing to serve the remainder of his duly elected school board term may be found to have been violated. Although unaddressed by the parties, whether Plaintiff, by failing to timely complete the financial oversight training, committed official misconduct is an open issue of state law critical to this action. The parties, however, have not discussed this issue, nor did Mills reach the issue, deciding instead that the matter was not then ripe for review thus rendering the Plaintiff's removal unlawful and a nullity requiring Plaintiff's reinstatement. Commissioner's Decision at 4.

Nor is "official misconduct" defined under New York Education Law; rather, the only definition of "official misconduct" found in New York's statutes is New York Penal Law ("N.Y. Penal Law")[21] § 195.00 which, as relevant to this case, provides "[a] public servant is guilty of official misconduct when, <u>with intent to obtain a benefit or deprive another person of a benefit</u>: * * * [h]e knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of the office." N.Y. Penal Law § 195.00[2] (underlining added). Assuming, *arguendo*, this definition of "official misconduct" applies in the instant case in defining the elements of official misconduct

---

[21] References to N.Y. Penal Law are to McKinney 2010.

under § 1709[18], Plaintiff's allegations that Defendant School Board Members thwarted Plaintiff's attempts to register for the required financial oversight training fails to address the question whether Plaintiff's failure to timely complete the requisite training was "knowingly." For example, the record is silent as to whether Plaintiff was aware that Defendant School Board Members intended to take imminent action based on Plaintiff's noncompliance, or was given any prior notice or admonition urging prompt compliance before Defendant School Board Members approved the Schaubert initiated Statement of Charge. Defendant School Board Members do not dispute that Schaubert's intervention with Dr. Godshall effectively prevented Plaintiff's timely compliance.

Moreover, nothing in the record indicates the Statement of Charge alleged Plaintiff's failure to comply with § 2102-a was done with the intent to "benefit or deprive another person of a benefit," a further precondition to culpability under Penal Law § 195.00[2]. Nor does the record indicate whether, under New York law, Plaintiff's belated compliance 'cures' his failure to timely complete the requisite training, *nunc pro tunc*, thus negating any finding of "official misconduct," under § 1709[18], based on Plaintiff's noncompliance as of June 30, 2007. The record is devoid of any allegations or evidence establishing whether this issue was discussed in the proceedings leading to Plaintiff's ouster from the School Board, although Defendant School Board Members maintain the decision to adopt the Statement of Charge and to seek Plaintiff's removal was made upon advice of counsel, Mr. Kahn. Defendant School Board Members' Memorandum at 13. If, however, such failure under New York law does not qualify as official misconduct, Defendants' conduct in issuing the Statement of Charge, an event

that occurred at the regularly-scheduled June 19, 2007 School Board meeting from which the public was excluded, provides additional support for Plaintiff's Fourteenth Amendment due process claim in that Plaintiff's liberty interest was violated without a proper legal predicate, *i.e.*, in violation of the New York Open Meetings Law, under the relevant state law, § 1709[18], upon which Defendant School Board Members relied in taking action against Plaintiff by effecting Plaintiff's removal on June 30, 2007.

Further, although Plaintiff was, in accordance with the Commissioner's Decision, reinstated to the School Board in March 2008, because the Commissioner never addressed whether Plaintiff's failure to complete the financial oversight training by July 1, 2007, would, as a matter of law, constitute official misconduct supporting removal under § 1709[18], the Commissioner's Decision could not neutralize the stigmatizing damage to Plaintiff's reputation caused by the unlawful removal.[22] That Plaintiff was not, following his discharge for the alleged official misconduct based on Plaintiff's failure to timely complete the required financial oversight training, re-elected to the School Board in 2009 and 2010, after having been previously elected to four consecutive terms, is circumstantial evidence that Plaintiff's removal from the School Board for

---

[22] The parties do not address that if Plaintiff's belated compliance with § 2102-a could not bar a finding of official misconduct against Plaintiffs, Commissioner' Mills's subsequent determination that the Statement of Charge was premature was itself a moot point. Simply, how could the Commissioner reinstate a board member who, at that time, was guilty of official misconduct based on not having completed the financial oversight training by July 1, 2007, a fact that is not effaced by Plaintiff's subsequent, albeit belated, completion of the training on July 28, 2007? It would be highly anomalous for the Commissioner to have reinstated a board member who was in fact guilty of official misconduct. That the Commissioner's nullification of Plaintiff's removal strongly implies Plaintiff was not guilty of official misconduct is consistent with the fact that Plaintiff, upon being reinstated to the School Board, was not subjected to a new Statement of Charge seeking his removal on the basis that Plaintiff's belated completion of the financial oversight training constituted official misconduct under § 1709[18], nor to any similar action by the commissioner having been appraised of Plaintiff's compliance after the July 1, 2007deadline pursuant to § 2102-a. In sum, the facts as pleaded plausibly indicate that Plaintiff was not guilty of official misconduct as a ground for removal by Defendant School Board Members.

alleged official misconduct was, in fact, stigmatizing and damaging to Plaintiff's reputation, a significant factor in Plaintiff's constituents' perception of Plaintiff's character and fitness to serve on the School Board. Such arguably unconstitutional interference with the 2009 and 2010 School Board election process cuts to the heart of representative government.

As such, Plaintiff has stated a claim that Defendants deprived Plaintiff of a protected liberty interest. Because Plaintiff's allegations state a valid claim for deprivation of a protected liberty interest based on Defendant School Board Members' removal of Plaintiff from the School Board under circumstances giving rise to a defamatory, stigma-plus, type of false and unlawful accusation, the court must consider whether Plaintiff has sufficiently alleged such deprivation occurred in the absence of due process.

It is settled that "the Due Process Clause provides that certain substantive rights - life, liberty, and property - cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985). As such, "once it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Id*. (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Although the Due Process Clause's "root requirement" is a pre-deprivation hearing, *Loudermill*, 470 U.S. at 542 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971), "the pretermination 'hearing,' though

necessary, need not be elaborate." *Id*. (citing *Boddie*, 401 U.S. at 378). Nevertheless, the opportunity to be heard provided by the hearing must be "meaningful." *See Associated Industries*, 511 U.S. at 656 (suggesting that constitutional due process concerns are satisfied by a "*meaningful* opportunity" for taxpayers to challenge the validity of contested tax assessments in a predeprivation hearing (italics added)). In the instant case, the factual allegations of the Complaint establish that, if true, Plaintiff's predeprivation hearing, held on June 30, 2007, fell far short of the required meaningful opportunity threshold.

In particular, although Mr. Griffin presided over the June 30, 2007 School Board meeting, there is no indication in the record as to Griffin's role at the meeting. Significantly, the decision to remove Plaintiff was made by Defendant School Board Members, *i.e.*, the same individuals who voted in favor of the Resolution to hold the special School Board meeting on June 30, 2007, solely to discuss the Statement of Charge, issued by Schaubert.[23] Not only have Defendants not disputed that after issuing the Statement of Charge, Schaubert successfully interfered with Plaintiff's attempts to register for the financial oversight training, but Defendant School District submits as an exhibit a copy of Schaubert's June 20, 2007 e-mail to Dr. Godschall advising, consistent with Plaintiff's allegations, Complaint ¶ 18, that "[a]s for the charges against Mr. Lilly and Mr. Stepien that were voted on last night, I know Mr. Lilly is tight

---

[23] It is curious what was actually discussed at the June 30, 2007 predeprivation hearing given that Plaintiff could not then dispute that he had not, at that time, completed the financial oversight training, yet the meeting lasted nine hours, Complaint ¶ 25, with no other apparent items on the meeting agenda. Although Plaintiff alludes to a transcript of the June 30, 2007 hearing, Complaint ¶ 29 ("The complete record of the [June 30, 2007] Hearing is contained in the transcript prepared by Peterson Reporting."), no copy of such transcript is in the record.

with BOCES but all I can ask is 'don't do them any favors.'  Let the legal process work

as it is written."  School District's Exh. D.  Schaubert's attempt to prevent Plaintiff from

coming into compliance with § 2102-a by contacting Dr. Godshall and Kremer, if true,

provides strong potential evidence that an adverse finding of official misconduct at the

June 30, 2007 meeting as a basis of Plaintiff's removal was a foregone conclusion,

negating any realistic possibility that Plaintiff would receive an impartial hearing on the

Statement of Charge at the June 30, 2007 School Board meeting, a basic prerequisite

of procedural due process.  *Associated Industries*, 511 U.S. at 656; *Loudermill*, 470

U.S. at 542 (quoting *Boddie*, 401 U.S. at 378).  The factual allegations of the Complaint,

including that Defendant School Board Members tended to vote as a bloc against

Plaintiff on other School Board matters, thus state that the circumstances surrounding

Defendant School Board Members' decision to remove Plaintiff from the School Board

indicate the predeprivation hearing provided Plaintiff with a less than "meaningful"

opportunity to refute the Statement of Charge.

Moreover, as discussed, although Plaintiff was provided with a modicum of post-

deprivation administrative review, resulting in the Commissioner ordering Plaintiff's

immediate reinstatement to the School Board, because the Commissioner's Decision

did not address whether a school board member's failure to timely complete the

financial oversight training would amount official misconduct as contemplated as a

ground for removal pursuant to § 1709[18], the Commissioner's Decision did not

specifically exonerate Plaintiff nor completely clear Plaintiff's reputation, such that the

post-deprivation relief Plaintiff received was not complete or effective.  As noted,

Discussion, *supra*, at 26, n. 22, after Plaintiff's reinstatement, no action to withdraw or

reject the Statement of Charge was taken and the probably unfounded and serious official misconduct accusation remain on the School Board's public record. The lateness of the appeal action – nine months – by the Commissioner merely aggravated the "stigma plus" inflicted upon Plaintiff by Defendants' removal action against Plaintiff.

Plaintiff has thus stated a valid Fourteenth Amendment due process claim for which Plaintiff is entitled to compensatory damages during the period of Plaintiff's unlawful removal.

**B.      First Amendment Retaliation Claim**

Plaintiff asserts that Defendant School Board Members orchestrated Plaintiff's wrongful removal from the School Board and later subjected Plaintiff to defamatory statements, even after Schaubert and Palmeri left the School Board, to retaliate against Plaintiff whose positions on policy matters before the School Board were often contrary to those taken by Defendant School Board Members. Complaint ¶ 71. Plaintiff maintains such political retaliation intended to prevent Plaintiff's re-election to the School Board at two subsequent elections in 2009 and 2010 is a violation of his First Amendment rights. *Id*. Defendants do not directly address whether Plaintiff has stated any First Amendment claim, relying instead on their arguments that Defendants are protected from liability for any such statements based on either legislative or quasi-judicial immunity. School District's Memorandum at 7-13; Defendant School Board Members' Memorandum at 9-14.

In the context of § 1983 claims, as in this case, the First Amendment "applies only to state actors." *Loce v. Time Warner Entertainment Advance/Newhouse P'ship*,

191 F.3d 256, 266 (2d Cir. 1999). By its terms, the Fourteenth Amendment's Due Process Clause, providing "nor shall any state deprive any person of life, liberty, or property without dues process of law," makes the First Amendment applicable to state actors. *Cooper v. U.S. Postal Service*, 577 F.3d 479, 491 (2d Cir. 2009). *See Lusk v. Village of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007) (recognizing although the First Amendment "speaks in terms of what is forbidden to 'Congress,' it has, of course long been established that 'the conception of liberty under the due process clause of the Fourteenth Amendment embraces the right of free speech,' and that its provisions therefore apply to state governments." (quoting *Stromberg v. California*, 283 U.S. 359, 368 (1931)). Moreover, Plaintiff's causes of action, Plaintiff's First and Second Claims, against Defendants, as state actors, for violating Plaintiff's constitutional rights, are provided by 42 U.S.C. § 1983. *Baker*, 443 U.S. at 144 n. 3; *Lusk*, 475 F.3d at 485. *See also Velez*, 401 F.3d at 96-98 (applying First Amendment protection to a New York school board member under § 1983). Here, Defendants also do not dispute that their actions, alleged by Plaintiff, insofar as taken while acting in their capacity as School Board members, which Plaintiff challenges, were taken as state actors.

In the instant action, as discussed, Discussion, *supra*, at 24, as of June 30, 2007, the date of Defendant School Board Members' removal action against Plaintiff, Plaintiff was not, in fact, in violation of § 2102-a, as the Commissioner found, a fact which Defendants also do not dispute and, as such, the Statement of Charge constituted a false and legally insufficient accusation against Plaintiff to warrant removal when Defendant School Board Members approved the Statement of Charge and later voted to remove Plaintiff. Plaintiff asserts that Defendant School Board Members used

Plaintiff's failure to achieve compliance with § 2102-a as a pretext for the vote to remove Plaintiff based on the false charge of official misconduct under § 1709[18] because Plaintiff regularly took a position on issues before the School Board contrary to the positions held by Defendant School Board Members.  Complaint ¶¶ 35-46, 50-53. Plaintiff further maintains that Defendant School Board Members made and sought to publicize, in local media outlets and through flyers disseminated by Defendants to School District voters, highly stigmatizing statements about Plaintiff's disagreements with Defendant School Board Members that virtually ensured Plaintiff would not be re-elected to the School Board in 2009 and 2010 and, in fact, produced this intended result.  Thus, the Complaint alleges that Defendants ousted Plaintiff from his position as an elected representative of the School District to retaliate against Plaintiff for taking policy positions at odds with those of Defendant School Board Members, such that Plaintiff, because of his presumably faithful representation of his constituents, however disagreeable to Defendant School Board Members, was both removed from the School Board and prevented by them from being re-elected to the School Board on the basis of exercising his First Amendment protected rights.  These allegations adequately state a First Amendment retaliation claim.  *Velez*, 401 F.3d at 97 (holding school board member enjoyed First Amendment right to faithfully represent constituents by taking positions on school district matters despite fact that such positions may be contrary to positions held by majority of school board members).[24]

---

[24] Because Defendants do not challenge the Complaint on the issue of causality, the court does not address whether the Complaint plausibly alleges that Defendant School Board Members' retaliatory actions were a substantial factor in bringing about Plaintiff's defeat in his 2009 and 2010 re-election bids.

In particular, the "outright removal" of a school board member – an elected representative – and the attendant preclusion of the school board member's participation in school board debates, voting, or serving of constituents, by unlawful removal, solely because the member's public policy views are contrary to those held by the remaining school board members, is to "offend the basis purposes of the Free Speech clause – the facilitation of full and frank discussion in the shaping of policy and the unobstructed transmission of the people's views to those charged with decision making." *Velez*, 401 F.3d at 97-98 (citing *Bond v. Floyd*, 385 U.S. 116, 135-36 (1966) ("The manifest function of the First Amendment in a representative government requires that the legislators be given the widest latitude to express their views on issues of policy.")). As the Second Circuit has recognized, the "very structure" of a local school board is intended to facilitate democratic ends. *Id*. at 98. School board "[m]embers are elected to provide additional voices – to oppose, critique, supplement, modify, and suggest policies" so as to "more effectively deliver education to the students. . . ." *Id*. Permitting the removal of board members on political grounds "would undermine the very object of the position" occupied by school board members. *Id*. Moreover, that following Plaintiff's reinstatement in 2008, by action of the Commissioner, Defendant School Board Members did not further attempt to remove Plaintiff, despite Plaintiff's late compliance with § 2102-a, lends support to Plaintiff's allegation that the premature Statement of Charge was a pretext to disguise Defendant School Board Members' intended retaliation against Plaintiff based on the exercise of Plaintiff's First Amendment rights, however disagreeable to Defendant School Board Members Plaintiff's oppositional, but nonetheless protected, conduct as a board member may

33

have been.  As such, the removal of a school board member from a school board, thereby stripping the elected representative of his office, based solely on the representative's policy views, gives rise to a plausible cause of action for retaliation in violation of the First Amendment against the Defendant School Board Members, acting under color of state law, responsible for the ouster.  *Id*.

With regard to Plaintiff's allegations that all four Defendant School Board Members also made false and defamatory statements about Plaintiff to dissuade voters from re-electing Plaintiff to the School Board in 2009 and 2010, such statements, insofar as they reasonably can be construed, based on Plaintiff's allegations, as continued retaliation against Plaintiff, also state plausible claims under the First Amendment.  That Defendants Shaubert and Palmeri, who did not seek re-election to the School Board in 2007, were no longer School Board members as of July 1, 2007, does not necessarily shield Schaubert and Palmeri from liability under § 1983 for the alleged defamatory statements made in connection with Plaintiff's 2009 and 2010 re-election bids to the School Board.  Although the court is not in possession of any of the statements Plaintiff alleges Defendant School Board Members released in 2009 and 2010, when Laub and Mezhir continued to be School Board members, if Schaubert and Palmeri made such statements while purportedly acting according to official power previously possessed based on their former School Board positions, it is plausible that Schaubert and Palmeri purported to make such statements pursuant to their former authority as School Board members, especially in their former positions, respectively, as School Board president and vice-president, rendering them liable for a § 1983

claim.[25]  *See Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) ("liability may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent authority of the police department").  *See also Dean v. City of Buffalo*, 579 F.Supp.2d 391, 404 (W.D.N.Y. 2008) ("A person may also be found to act under color of law when he acts under pretense of law." (citing *Screws v. U.S.*, 325 U.S 91, 111 (1945)).  Here, a liberal reading of the Complaint indicates Plaintiff has plausibly stated that Defendant School Board Members' attacks on Plaintiff were intended to undermine Plaintiff's chances of re-election to the School Board, implying that all four Defendant School Board Members, including Laub and Mezhir, as well as then-former members Schaubert and Palmeri, were invoking their mantle as School Board members in making the alleged defamatory statements to prevent Plaintiff from being re-elected to the School Board in 2009 and 2010.  Accordingly, Plaintiff's allegations in supporting Plaintiff's Second Claim are sufficient to cast all four Defendant School Board Members in liability for First Amendment retaliation in connection with their actions against Plaintiff's 2009 and 2010 re-election efforts.

Defendants' motions to dismiss the Complaint for failing to state a First Amendment retaliation claim should be DENIED.

---

[25] Because no copies of the allegedly defamatory statements made by Defendant School Board Members in connection with Plaintiff's 2009 and 2010 School Board campaigns are in the record, it is not possible to discern whether Schaubert and Palmeri did, in fact, identify themselves as prior School Board members.  Nevertheless, because the matter is before the court on motions to dismiss for failure to state a claim, rather than for summary judgment, the absence in the record of such evidence is not fatal to Plaintiff's case at this time, where the relevant inquiry is whether the claim is plausible.  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

**2.      State Law Claims**

Plaintiff asserts, under New York common law, claims for malicious prosecution (Third Claim), and intentional infliction of emotional distress (Fourth Claim) ("state law claims"), based on Defendant School Board Members' production and distribution to registered voters of school board election informational flyers urging voters not to vote for Plaintiff in the 2009 and 2010 School District elections.   Defendants argue that both of Plaintiff's state law claims are barred by N.Y. Educ. Law § 3813[2] ("§ 3813[2]"),[26] for failing to serve a Notice of Claim on the School District and the Defendant School Board Members.   School District Memorandum at 13-14; Defendant School Board Members' Memorandum at 15-16.   Defendants also maintain that the state law claims are time-barred by the applicable one-year limitations period.   School District Memorandum at 14; Defendant School Board Members' Memorandum at 16.   Plaintiff has not responded in opposition to either of these arguments.

**A.      Statute of Limitations**

Pursuant to N.Y. C.P.L.R. § 215[3] ("§ 215[3]"), actions for malicious prosecution are subject to a one-year limitations period.   A claim for malicious prosecution accrues for statute of limitations purposes when the subject proceeding is terminated in the plaintiff's favor.   *Newfane v. General Star Nat. Ins. Co.*, 784 N.Y.S.2d 787, 792 (4th Dep't. 2004) (citing cases).   In the instant case, however, the Complaint does not establish that the June 30, 2007 meeting was either a judicial or quasi-judicial

---

[26] N.Y. Educ. Law § 3813[2] requires compliance with notice of claim provisions of New York General Municipal Law §§  50-e and 50-i for any tort action commenced against a school board.

proceeding, or that the Statement of Charge was terminated in Plaintiff's favor, to support a malicious prosecution claim based on the Statement of Charge.

"In order to recover for malicious prosecution, a plaintiff must establish four elements: [1] that a criminal proceeding was commenced; [2] that it was terminated in favor of the accused; [3] that it lacked probable cause; and [4] that the proceeding was brought out of actual malice." *Cantalino v. Danner*, 754 N.E.2d 164, 166-67 (N.Y. 2001) (bracketed material added and citing cases). "A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure. An action for malicious prosecution is usually based upon an arrest in criminal proceedings, although it may be founded upon a civil action when commenced simply to harass and oppress the defendant." *Burt v. Smith*, 73 N.E. 495, 496 (N.Y. 1905). Probable cause "is an absolute protection against an action for malicious prosecution even when express malice is proved." *Id*. Administrative proceedings can, in limited circumstances, provide the basis for a malicious prosecution claim if certain quasi-judicial procedures are followed. *Groat v. Town Bd. of Town of Glenville*, 426 N.Y.S.2d 339, 341 (3d Dep't.), *appeal dismissed by* 50 N.Y.2d 928 (1980). Here, although the Complaint alleges a lack of probable cause to support the Statement of Charge, such that Defendant School Board Members' adoption of the Statement of Cause was a pretext for these Defendants' actual malice and desire to retaliate against Plaintiff for exercising his First Amendment rights, the Complaint does not allege that the actions taken against Plaintiff at the June 30, 2007 meeting have ever been terminated in Plaintiff's favor by action of the School Board.

In particular, although the Commissioner's Decision ordered Plaintiff's immediate

reinstatement to the School Board, the Commissioner never determined, as a matter of either law or fact, that Plaintiff's failure to timely complete the required financial oversight training could not constitute official misconduct. Rather, the Commissioner merely found the Statement of Charge to have been premature as Plaintiff's term, and the one-year period within which to comply with § 2102-a had not then expired. Nor, according to the pleadings, did Defendant School Board Members, upon Plaintiff's reinstatement, ever vote to either nullify or withdraw the Statement of Charge during the balance of Plaintiff's 2006-2009 term following his reinstatement. That, based on the pleadings, the Statement of Charge remains viable and a matter of public record is circumstantially supported by the alleged fact that Plaintiff's 2009 and 2010 re-election bids failed.[27] As such, the Complaint fails to state a claim for malicious prosecution because the June 30, 2007 administrative removal proceedings against him have never fully terminated in Plaintiff's favor, as required, *Cantalino*, *supra*, at 166-67, rendering the timeliness of such claim irrelevant. Plaintiff's Third Claim alleging malicious prosecution should be DISMISSED for failing to state a claim.

With regard to Plaintiff's Fourth Claim alleging intentional infliction of emotional distress, while not specifically listed in § 215[3], the Second Circuit and courts within New York have repeatedly held claims for intentional infliction of emotional distress among the torts subject to the one-year limitations period. *See*, *e.g.*, *Okure v. Owens*,

---

[27] Plaintiff's unsuccessful re-election bids in 2009 and 2010 suggest Plaintiff could have been the object of continuing public obloquy based on the unresolved accusation of "official misconduct" as alleged in the Statement of Charge and approved by Defendant School Board Members that, by its nature, carries with it a significant degree of public opprobrium and stigma. Accordingly, the continuing adverse, albeit unresolved, impact of the Statement of Charge as to Plaintiff is not rendered moot by the fact that Plaintiff is, at present, no longer a member of the School Board.

816 F.2d 45, 50 (2d Cir. 1987); *Padilla v. Verczky-Porter*, 885 N.Y.S.2d 843, 845 (4th Dep't. 2009). Further, an intentional infliction of emotional distress claim accrues with the occurrence of the alleged injury. *Passucci v. Home Depot, Inc.*, 889 N.Y.S.2d 353, 355 (4th Dep't. 2009). However, the continuing violation doctrine applies to claims for intentional infliction of emotional distress under New York common law provided that the final actionable event occurred within the one-year limitations period. *Neufeld v. Neufeld*, 910 F.Supp. 977, 985 (S.D.N.Y. 1996) (applying continuing violation doctrine to intentional infliction of emotional distress claim); *Dana v. Oak Park Marina, Inc.*, 660 N.Y.S.2d 906, 911 (4th Dep't. 1997) (holding plaintiff's allegation of continuous series of extreme and outrageous acts, each of which would be actionable as independent intentional infliction of emotional distress claim, statute of limitations does not begin to run until occurrence of last subject act). The continuing violation doctrine tolls the running of a period of limitations to the date of the commission of the last wrongful act. *Cornwell v. Robinson*, 23 F.3d 694, 702 (2d Cir. 1994).

Here, the continuing and unresolved status of the Statement of Charge accusing Plaintiff of official misconduct, a misdemeanor, arguably continues to impact Plaintiff to the present, such that the one-year limitations period has yet to commence running. *See Bloomingdales, Inc. v. New York City Transit Authority*, 915 N.E.2d 608, 665 (N.Y. 2009) (holding tort claim against public authority based on damage to storm drain did not, for statute of limitations and notice of claim purposes, accrue upon the event by which the storm drain was damaged but, rather, because the damaged condition of the storm drain continued and was not discovered until flooding resulted from such damage, the continued damaged condition gave rise to successive causes of action).

It is plausibly that the presence of the still unresolved Statement of Charge could hinder any future attempt by Plaintiff to seek re-election to the School Board.

As such, although Plaintiff was first allegedly injured on June 19, 2007, *i.e.*, the date the Statement of Charge accusing Plaintiff of official misconduct was adopted by Defendant School Board Members, Plaintiff's allegations that Defendant School Board Members, after Plaintiff was reinstated to the School Board, continued to release defamatory statements against Plaintiff in connection with Plaintiff's 2009 and 2010 re-election bids, can plausibly be construed as alleging a continuing infliction of emotional distress, the last act of which has yet to occur given the existence of the Statement of Charge, which remains unresolved and viable.

Plaintiff's commencement of the instant action on June 30, 2010, for which the statute of limitations has yet to commence running with regard to the Fourth Claim alleging a continuing intentional infliction of emotional distress based on the Statement of Charge and the statements Defendant School Board Members allegedly made in connection with Plaintiff's 2009 and 2010 School Board campaigns, renders the Fourth Claim timely, and Defendants' motions to dismiss should be DENIED.

Further, although not addressed by the parties, insofar as Defendant School Board Members have construed the Fourth Claim as one for defamation, for which the applicable statute of limitations is one year, N.Y. C.P.L.R. § 215[3], the Fourth Claim, is not untimely with regard to Plaintiff's allegations concerning Defendant School Board Members' alleged defamatory statements made in connection with the 2010 School District election, but is untimely with regard to the 2009 School Board election and the Statement of Charge adopted in 2007. Because claims for defamation immediately

accrue upon the occurrence of the tortious act, insofar as Defendant School Board Members have construed Plaintiff's Fourth Claim as one for defamation, such claim does not support  the continuing violation exception to the statute of limitations.  *Lettis v. U.S. Postal Service*, 39 F.Supp.2d 181, 205 (E.D.N.Y. 1998) (defamation) (citing *Abdullajeva v. Club Quarters, Inc.*, 1996 WL 497029, at *7 (S.D.N.Y. Sept. 3, 1996))

As such Defendants' motions to dismiss the Fourth Claim as time-barred should be DENIED with regard to the intentional infliction of emotional distress claim, as well as to any defamation claim based on the asserted retaliatory and defamatory statements published by Defendant School Board Members in connection with the 2010 election, but should be GRANTED insofar as Plaintiff has stated a defamation claim based on the 2009 School Board election and the Statement of Charge.


**B.      Notice of Claim**

As relevant to the instant action, N.Y. Educ. Law § 3813[2] ("§ 3813[2]"), provides that any tort action commenced against a school district or school board member "acting in the discharge of his duties within the scope of his employment" must be preceded by the service of a notice of claim ("Notice of Claim") made and served in compliance with New York General Municipal Law ("N.Y. Gen. Mun. Law")[28] § 50-e ("§ 50-e").  Section 50-e[1](a) requires service of the Notice of Claim within 90 days of the accrual of the claim.  Further, such action shall be commenced pursuant to N.Y. Gen. Mun. Law § 50-i ("§ 50-i"), N.Y. Educ. Law § 3813[2], which requires that compliance

---

[28] Unless otherwise indicated, references to "N.Y. Gen. Mun. Law" are to McKinney 2007.

with § 50-e be pleaded in the complaint, as well as that 30 days have elapsed since service of the Notice of Claim, with no response or a refusal to act by the party upon whom the Notice of Claim was served.  N.Y. Gen. Mun. Law § 50-i(1).  Upon application, the court may, in its discretion, extend the plaintiff's time in which to serve a Notice of Claim, although such extension shall not exceed the applicable statute of limitations.  N.Y. Gen. Mun. Law § 50-e[5].  *See Mroz v. City of Tonawanda*, 999 F.Supp. 436, 450 (W.D.N.Y. 1998) ("the time period within which to serve a late notice of claim cannot be extended beyond the applicable limitations period . . . .) (citing New York caselaw).

As discussed, Discussion, *supra*, at 36-38, Plaintiff's malicious prosecution claim should be dismissed for failing to state a claim, rendering moot Defendants' notice of claim argument as to such claim.  Nevertheless, because Plaintiff's state law intentional infliction of emotional distress claim is subject to the continuing violation doctrine, *Neufeld*, 910 F.Supp. at 985; *Dana*, 660 N.Y.S.2d at 911, the statute of limitations has not expired as to such claim.  Although Plaintiff has not, to date, served Defendants with a Notice of Claim, Plaintiff's intentional infliction of emotional distress claim is a continuing violation, for which the last act has yet to occur based on the continued existence of the Statement of Charge.  Further, the Notice of Claim provision is subject to the same tolling provisions as the relevant statute of limitations.  *Campbell v. City of New York*, 825 N.E.2d 121, 122-23 (N.Y. 2005).  Plaintiff is thus free to serve a Notice of Claim with regard to the intentional infliction of emotional distress claim without first seeking leave to do so.

Insofar as Plaintiff's Fourth Claim has been construed by Defendant School

Board Members as a defamation claim, Defendant School Board Members Memorandum at 15-16; Defendant School Board Members Reply at 7, to which the continuing violation doctrine does not apply, *Lettis*, 39 F.Supp.2d at 205, because such claim is subject to a one-year period of limitations which has already expired with regard to the Statement of Charge, no leave for a late Notice of Claim can be granted.[29]   The Fourth Claim, is not, however, untimely with regard to Plaintiff's allegations concerning Defendant School Board Members' alleged defamatory statements made in connection with the 2010 School District election, for which Plaintiff may seek leave to file a late notice of claim.  Such an application for permission to file a late notice of claim, however, must be made to the appropriate state court.  *See Corcoran v. New York Power Authority*, 202 F.3d 530, 540 (2d Cir. 1999) ("The appropriate state court may extend the time to file a notice of claim until the relevant statute of limitations expires, even if the action has already been commenced", but declining to decide "whether the federal court [has] such jurisdiction [to grant leave to file a late notice of claim]. . . .").  *See also* N.Y. Gen. Mun. Law § 50-e[7] (providing applications for late notice of claim "shall be made to the supreme court or to the county court . . . .").

Furthermore, New York's Notice of Claim provisions do not apply to Plaintiff's civil rights claims.  *Felder v. Casey*, 487 U.S. 131, 152-53 (1988) (state notice-of-claim

---

[29] The court notes that insofar as Defendant School Board Members Schaubert and Palmeri are alleged to have engaged in First Amendment violations against Plaintiff after leaving the School Board on June 30, 2007, their alleged participation in the production and disbursement of campaign literature urging registered voters not to vote for Plaintiff in his 2009 re-election bid was not within the scope of employment as school board members and, thus, such conduct was exempt from the Notice of Claim provisions.  *Rew v. County of Niagara*, 901 N.Y.S.2d 442, 443 (4th Dep't. 2010) (holding plaintiff not required to file notice of claim with regard to tort allegedly committed by defendant municipal employee outside the scope of the defendant's employment).

statutes cannot bar § 1983 relief). Plaintiff's failure to comply with §§ 50-e and 50-i thus warrants dismissal of the Plaintiff's state law claim for malicious prosecution, but not Plaintiff's claim for intentional infliction of emotional distress based on Defendant School Board Members' retaliatory actions with respect to the 2009 and 2010 School Board elections and the unresolved Statement of Charge, as well as the civil rights claims asserted pursuant to § 1983.[30]  Further, insofar as Schaubert and Palmeri can be found as not acting under color of state law when making the alleged defamatory statements in connection with Plaintiff's 2009 and 2010 re-election bids, the notice of claim requirements would not pertain to such statements.


## 3.    Immunity

Defendants maintain they are either absolutely immune from liability on Plaintiff's claims because Defendants' actions were either legislative or quasi-judicial in nature.

---

[30] Although not alleged by Plaintiff, the allegations of the Complaint could be construed as alleging Defendant School Board Members conspired to deprive Plaintiff of his First and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1985 ("§ 1985"), for which the statute of limitations is three years. Significantly, state action is not a requirement for liability under § 1985, *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) (holding § 1985(3) contains no requirement of state action and thus applies to private conspiracies "aim[ed] at a deprivation of the equal enjoyment of rights secured by the law to all."), rendering irrelevant the fact that Defendant School Board Members Schaubert and Palmeri were no longer School Board members in 2009, or that the web-site allegedly used by Defendant School Board Members at that time was not operated as a School District facility, but as a private one, when the allegedly defamatory campaign literature was produced and disbursed in that medium to the School District's registered voters.  A § 1985 conspiracy claim, however, must also alleged that the conspiracy was motivated by some class-based animus. *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *overruled on other grounds sub nom.*, *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009).  Although Plaintiff alleges that some of Defendant School Board Members' defamatory statements were made in connection with Plaintiff's recent May 2009 and 2010 School Board re-election bids, the court expresses no opinion as to whether Plaintiff could amend the Complaint to sufficiently allege a § 1985 civil rights conspiracy claim, nor whether such claims would be subject to dismissal as time-barred under the applicable limitations period. *See Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (where federal cause of action provides no statute of limitations, court must apply the "most appropriate or analogous state statute of limitations") (internal quotation omitted).

School District's Memorandum at 7-13; Defendant School Board Members' Memorandum at 9-11.  Alternatively, Defendant School Board Members also assert they are entitled to qualified immunity on Plaintiff's § 1983 civil rights claims.  Defendant School Board Members' Memorandum at 12-14.

### A.    Absolute Immunity

Defendants maintain they are absolutely immune from liability on the instant claims because of the legislative and quasi-judicial nature of the challenged proceedings.[31]  School District's Memorandum at 7-13; Defendant School Board Members' Memorandum at 9-11.  In opposition, Plaintiff maintains that the failure to hold a public vote to remove Plaintiff from the School Board renders such vote "purely administrative in nature and thus not afforded the protection of absolute immunity."  Plaintiff's Memorandum at 4-9.  In further support of dismissal, the School District argues that Plaintiff references no legal authority supporting Plaintiff's assertion that the failure to vote in public to remove Plaintiff from the School Board rendered the vote administrative and, thus, not entitled to absolute immunity.  School District's Memorandum at 1-3; Defendant School Board Members Memorandum at 2-6.

In particular, Defendants contend that the decision to adopt and serve the Statement of Charge, initiate removal proceedings using Griffin as a hearing officer, approve the Statement of Charge and the resulting removal of Plaintiff, were all

_____

[31] Defendants do not assert any immunity with regard to Plaintiff's First Amendment retaliation claims; rather, Defendant School Board Members only construe such statements as attempting to assert a state claim for defamation which is time-barred.  Defendant School Board Members Memorandum at 15-16; Defendant School Board Members Reply at 7.

legislative actions beyond the scope of judicial review or any remedies in this action. School District's Memorandum at 7-13; Defendant School Board Members' Memorandum at 9-11. Defendants also point to the fact that Judge Arcara, in adopting Judge Scott's R&R, held in connection with a similar action commenced by Stepien, that the proceedings in which Defendants discussed and voted to remove Plaintiff from the School Board were of a legislative nature and, thus, were entitled to the legislative privilege. School District's Memorandum at 3-6, 9, 11; Defendant School Board Members' Memorandum at 10-11.

In opposition to Defendants' motions, Plaintiff concedes that Defendants' actions at the hearing are absolutely immune under both legislative and quasi-judicial immunity. Plaintiff's Memorandum at 5-7. Plaintiff, however, maintains his challenge is limited to Defendants' taking of the vote to remove him from the School Board at a closed, executive session, in violation of New York's Open Meetings Law, such that Defendants' conduct is not absolutely protected either as a legislative or quasi-judicial act as Defendants assert. *Id*. at 7-11.

In further support of its motion, Defendant School District also argues that New York's Open Meetings Law specifically exempts "quasi-judicial proceedings" from Open Meetings Law requirements and that regardless of whether the discussions concerning the Statement of Charge were quasi-judicial, legislative, or administrative in nature, the actual vote to remove Plaintiff from the School Board was not required to be taken in public because it did not constitute "public business" subject to the Open Meetings Law requirements. School District's Reply at 1-2 (citing N.Y. Pub. Off. Law § 108[1]). Defendant School Board Members further argue that because the record establishes

Defendant School Board Members' actions in participating in the proceedings by which Plaintiff was removed from the School Board were legislative in nature, such actions are absolutely immune from liability, rendering irrelevant Plaintiff's assertions that Defendants motives in removing Plaintiff from the School Board were "political, personal or impure. . . ."  Defendant School Board Members' Reply at 5-6.[32]

### 1.    Legislative Immunity

As stated, Defendant School Board Members maintain that their conduct in removing Plaintiff from the School Board was of a legislative nature and therefore is absolutely immune from liability, as found by Judge Scott in *Stepien*.  School District's Memorandum at 7-13; Defendant School Board Member's Memorandum at 9-11.  In response, Plaintiff maintains his challenge is limited to the taking of the vote to remove him from the School Board in a closed, executive session, in violation of New York's Open Meetings Law, but does not address Defendants' assertion of legislative immunity.  Plaintiff's Memorandum at 7-11.  Defendants' reliance on legislative immunity is misplaced.

Initially, the court observes that as to Plaintiff's malicious prosecution claim, because the court finds this claim fails to state a claim under New York law, Discussion, *supra*, at 36-38, it is unnecessary to reach the merits of Defendant's absolute privilege defense as applied to this claim.  However, insofar as Defendants assert absolute executive or legislative immunity shields Defendants from liability on Plaintiff's federal

---

[32] How removal of an elected school board member for alleged official misconduct does not constitute "public business" under the Open Meetings Law is not explained by Defendants.

civil rights claims and the state law intentional infliction of mental distress claim based on Defendant School Board Members' adoption of the Statement of Charge and the alleged interference with Plaintiff's attempts to seek reelection to the School Board in 2009 and 2010, claims which the court finds are not time-barred, Discussion, *supra*, at 38-41, the court also finds that such claims are not barred by the doctrine of absolute immunity as applicable to the deliberations and actions of Defendant School Board Members as members of an elected board of education.

With regard to Defendants' reliance on Judge Scott's R&R, the plaintiff in *Stepien* did not address the legislative immunity argument raised by the *Stepien* defendants. *Stepien*, 2010 WL 1875763, at *8. As such, Judge Scott's R&R contains no discussion as to why the *Stepien* defendants' conduct at issue, which is similar yet not identical to the conduct of which Plaintiff complains in the instant case, was entitled to absolute legislative immunity. For example, challenged in *Stepien*, but not in the instant action, are alleged defamatory statements about Stepien and Lilly made by the Defendant School Board Members at the June 30, 2007 School Board meeting. *See Stepien*, 08-CV-487A, Amended Complaint (Doc. No. 38), ¶ 23. Although like Lilly, Stepien alleged both due process and First Amendment claims, the merits of such claims were not addressed by the court in *Stepien*. [33] As such, despite the similarity of parties and allegations, given the important issues presented in the instant action based on the removal of a duly elected school board member for failure to timely complete the

---

[33] The court notes that also not addressed in Judge Scott's R&R is whether the failure of Stepien and Lilly to complete the financial oversight training prior to the end of July 2007 constituted official misconduct under § 1709[18] warranting removal, nor the fact that the Commissioner eventually reinstated Plaintiff and Stepien because the Statement of Charge was premature. *See* Discussion, *supra*, at n. 22.

financial oversight training, based on the secretive nature of the procedure utilized by Defendant School Board Members in effecting Plaintiff's removal raising, as discussed, Discussion, *supra*, at 17-41, serious issues of state law, and violations of Plaintiff's First and Fourteenth Amendment rights, the court declines to adopt the legal findings in *Stepien*, particularly as to Defendants' immunity assertions, with regard to the instant case.

The Second Circuit considered in *Harhay v. Town of Ellington Board of Education*, 323 F.3d 206 (2d Cir. 2003), whether legislative immunity applies in the context of a local school board's activities with regard to a § 1983 action brought by a tenured elementary school teacher whose employment position had been terminated as a result of budgetary cutbacks. In finding the defendant school board members were not entitled to absolute immunity based on the supposed legislative nature of defendants' actions, the Second Circuit found that the defendants' actions in denying the plaintiff teacher the right to be reappointed was administrative, and not legislative in nature. *Harhay*, 323 F.3d at 211.

Specifically, the court stated that "[l]egislators are entitled to absolute immunity from civil liability for their legislative activities." *Harhay*, 323 F.3d at 210. "Absolute legislative immunity for Section 1983 actions extends to local legislators." *Id*. (citing *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1997)). "The test for determining whether an act is legislative 'turns on the nature of the act, rather than on the motive or intent of the official performing it.'" *Id*. (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). In particular, "[u]nder this functional test, immunity depends on the nature of the act itself, not the identity of the actor performing it." *Id*. (citing *Forrester v. White*, 484 U.S. 219,

224 (1988)).

This "functional test's" first inquiry "is whether the [School] Board members' actions were legislative in function. In order for legislative immunity to attach, the act in question must be taken 'in the sphere of legitimate legislative activity.'" *Harhay*, 323 F.3d at 210 (quoting *Bogan*, 523 U.S. at 54). "Discretionary personnel decisions, even if undertaken by public officials who otherwise entitled to immunity, do not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors." *Id.* (citing Forrester, 484 U.S. at 229-30). Although the decision to eliminate a class of jobs for budgetary or policy reasons may be legislative in nature, because the school board's decision at issue in *Harhay* was "part of a process by which an employment situation regarding a single individual was resolved," the school board members' "acts were not quintessentially legislative" and, as such, were not entitled to absolute immunity. *Id.* at 211. In particular, in arriving at the decision to terminate the plaintiff tenured teacher, "[t]he [School] Board did not engage in the kind of broad, prospective policymaking that is characteristic of legislative action." *Id.*[34, 35]

---

[34] Despite discussing that absolute legislative immunity shields "local legislators" from liability in § 1983 actions, *Harhay*, 323 F.2d at 210, because the Second Circuit concluded that the school board's actions at issue in *Harhay* were not of a legislative nature, the Second Circuit did not discuss whether legislative immunity ever shields a school board's decisions from liability. Moreover, that lawsuits are brought under N.Y. C.P.L.R. Art. 78 to challenge school board decisions as arbitrary, capricious, or unlawful, *see, e.g., Mulgrew v. Board of Educ. of City School Dist. of City of New York*, 906 N.Y.S.2d 9, (1st Dep't. 2010) (affirming New York Supreme Court's decision that school board's decision to "phase out" 19 schools within school district was null for failure to comply with substantive New York Education Law requirements), strongly weighs against recognizing such immunity based on the notion that local school boards exercise legislative power because Article 78 proceedings do not reach the actions of legislative bodies, including municipal legislative bodies. David D. Siegel, New York Practice, 4th ed. (Thomson-West) at 960 (citing cases). As Article 78 covers actions of local school boards, *Mulgrew*, 906 N.Y.S.2d at 11, the actions of local schools operating under New York laws therefore are administrative, not legislative, in nature. *Id.* Moreover, the court's research fails to reveal any federal or state judicial ruling

Similarly, in the instant case, the decision to remove Plaintiff from the School Board was part of a process by which Plaintiff's purported failure to timely fulfill a training requirement was resolved not with regard to a class but, rather, only with regard to two affected School Board members, Plaintiff and Stepien, and there is no indication in the record that in making such decision, Defendants engaged in "broad, prospective policymaking . . . characteristic of legislative action." *Harhay*, 323 F.3d at 211. Defendants do not contend that within the June 30, 2007 signed statement finding Plaintiff and Stepien in violation of § 2102-a and Board Policy 2331, and directing their removal from the School Board,[36] is there any indication that the failure to timely complete the financial oversight training constitutes official misconduct under § 1709[18] requiring immediate removal from the School Board in the future, and the Commissioner's decision to reinstate Plaintiff, well after Plaintiff had complied with § 2102-a, is inconsistent with the notion that Plaintiff was, during the intervening period, guilty of "official misconduct" as Defendant School Board Members previously charged and determined. *See* Discussion, *supra*, at 24-27.

Further undermining Defendants' assertion that the decision to remove Plaintiff from the School Board was made by Defendant School Board Members in their

---

holding that New York school boards perform functions of a legislative nature under conditions similar to those alleged in the instant action, specifically, the adoption of a resolution ousting two School Board members for official misconduct, which charges were later held to be premature and, thus, legally insufficient to sustain the removal.

[35] The court notes that in *Velez*, *supra*, the plaintiff had conceded that the community school board members had not authority over the chancellor's removal of the plaintiff from the board, and had acted in a legislative capacity, such that the issue was not before the Second Circuit and, thus, not addressed. *Velez*, 401 F.3d at 99.

[36] No copy of the June 30, 2007 signed statement is found in the record.

legislative capacity is the fact that the procedure by which Plaintiff appealed the removal decision was by a petition to the Commissioner, pursuant to N.Y. Educ. Law §§ 310 and 311, which was an administrative remedy. *Contrast Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (former New York state senator challenging state senate resolution to expel senator through federal lawsuit, seeking injunctive relief preventing such expulsion, rather than through an administrative proceeding). Here, Plaintiff does not seek to prevent his removal (now mooted by the 2009 expiration of his term) but, rather, seeks to hold Defendant School Board Members liable for injuries and damages resulting from such removal, which has already been reversed by the Commissioner's decision. It is therefore difficult to square Defendant School Board Members' contention that Plaintiff's removal was a legislative function entitled to immunity, yet subject to plenary review and controlling disposition by an administrative official, *i.e.*, the Commissioner.

It is significant that "[u]nder New York law local school boards are granted general authority '[t]o have in all respect, the superintendence, management and control of the educational affairs of the district,'" *B.J.S. v. State Educ. Department/ University of New York*, 699 F.Supp.2d 586, 602 (W.D.N.Y. 2010) (quoting *Gulino v. New York State Educ. Dep't.*, 460 F.3d 361, 365 (2d Cir. 2006) (underlining and further internal quotation marks omitted), "'the New York Department of Education has substantial responsibility for education in the state, [yet] the local school districts maintain <u>significant</u> <u>control</u> <u>over</u> <u>the</u> <u>administration</u> <u>of</u> <u>local</u> <u>school</u> <u>district</u> <u>affairs</u>.'" *B.J.S.*, 699 F.Supp.2d at 602 (quoting *Gulino*, 469 F.3d at 366) (underlining added). That the function of local school boards in providing public education is primarily

administrative is consistent with N.Y. Educ. Law § 1709's limiting the powers and duties of school boards in New York to those that are administrative, rather than legislative, in nature.  Examples of such powers and duties include, *inter alia*, the adoption of "by-laws and rules for [the school board's] government as shall seem proper in the discharge of the duties required . . .", § 1709[1]; the establishment of "rules and regulations concerning the order and discipline of the schools, in the several departments thereof, as they may deem necessary to secure the best educational results," § 1709[2]; the prescription of "the course of study by which the pupils of the schools shall be graded and classified, and to regulate the admission of pupils and their transfer from one class or department to another, as their scholarship shall warrant," § 1709[3]; the prescription of "the text-books to be used in the school, . . ." § 1709[4]. Even a challenge to the legality of a contingency budget, arguably the exercise of a school board's authority most analogous to a legislative function, is properly challenged in an Article 78 proceeding, *see Polmanteer v. Bobo*, 794 N.Y.S.2d 171, 174-75 (4th Dep't. 2005) (considering taxpayers' challenge to legality contingency budget adopted by board of education in Article 78 proceeding), thereby establishing such function is administrative rather than legislative.  *See* Siegel, New York Practice, at 960.  Even decisions by the New York Board of Regents, from which the School District's authority to provide public education is derived, N.Y. Educ. Law § 101-a (providing "[t]he commissioner of education shall promulgate rules and regulations for the supervision, by school districts, of programs of performing services for the public good . . . ."), are considered administrative, rather than legislative.  *See Warder v. Board of Regents University of State of New York*, 423 N.E.2d 352, 358 (N.Y. 1981) (considering Board of

Regents' scheme for approving provisional charters as administrative decision).

Furthermore, under New York law, a local school board "is the corporate body that governs the schools and educational affairs of a particular municipal corporation, *i.e.*, a school district. In this statutory context, it is reasonable to infer that a board of education, like the district it governs, is a municipal corporation." *Woods v. Rondout Valley Central School Dist. Bd. of Educ.*, 466 F.3d 232, 243-44 & n. 4 (2d Cir. 2006) (quoting N.Y. Educ. Law § 1701 and citing N.Y. Educ. Law § 1804, referencing boards of education in "union free school districts" and acknowledging that N.Y. Educ. Law § 1804 "generally extends its [§ 1701's] provisions to central school districts. . . ."). Thus, New York law indicates that school boards in New York operate as administrative bodies, and do not exercise legislative responsibilities or functions.

Defendants, in support of dismissal based on absolute executive and legislative privilege cite *Lombardo v. Stoke*, 222 N.E.2d 721, 724-25 (N.Y. 1966) (absolute executive privilege applied to press release by New York Board of Higher Education rebutting allegations of tenure denials based on religious bias) and *Bd. of Educ. of the City of Buffalo v. Buffalo Council of Supervisors and Administrators,* 383 N.Y.S.2d 732, 737-38 (4th Dep't. 1996) (extending absolute executive privilege to alleged defamatory statements and discussions by school board member during board of education meeting in course of board's legislative function and denying arbitration of union grievance of alleged defamatory statement as barred by public policy) ("*Buffalo Bd. of Educ.*"). School District Memorandum at 7-12; Defendant School Board Members Memorandum at 9-11. Specifically, Defendants assert that adoption of the Statement of Charge cannot be the basis of Plaintiff's malicious prosecution and intentional

infliction of emotional distress (construed by Defendant School Board Members as a defamation claim) claims as these claims are barred by legislative privilege applicable to Defendant School Board Members' action in adopting the Statement of Charge and any discussions among the School Board Members preceding such adoption.  *Id.*

New York courts justify extending an absolute privilege to the statements of important public officials, including school board members, and the legislative acts of school boards on the ground that it is essential to the effective performance of the duties of important public executives and elected representatives that their statements and official conduct not be the subject of litigation in the form of defamation actions. *See Buffalo Bd. of Educ.*, 383 N.Y.S.2d at 736 (quoting *Lombardo*, 222 N.E.2d at 724). It is also New York law, however, that the privilege, which otherwise protects statements and actions of public executives and local legislative bodies, is inapplicable to communications or actions "unrelated to any matter within [the public official's] competence . . . or if the form of the communications – *e.g.*, a public statement – is totally unwarranted."  *Lombardo*, 222 N.E.2d at 724.

Here, Plaintiff alleges Defendant School Board Members intentionally inflicted mental distress upon Plaintiff when, in 2009 and 2010, these Defendants circulated adverse information in the form of leaflets and by use of a website, which may have been operated by the School District at Defendants' direction, and deprived Plaintiff of federal civil rights particularly, Defendant School Board Members' premature and unsuccessful effort to remove Plaintiff by adoption of the Statement of Charge accusing Plaintiff of official misconduct, a criminal offense under New York law.  Under the alleged circumstances, it is plausible that the Defendants made direct or indirect use,

*i.e.*, as a form of innuendo, of the Statement of Charge to accomplish their objective of interfering, successfully, with Plaintiff's attempts to gain re-election to the School Board in 2009 and 2010.

As it can safely be maintained that among Defendant School Board Members' official duties as enumerated by the N.Y. Education Law, *e.g.*, N.Y. Educ. Law § 1709 (school district board charged with responsibility of overseeing the provision of public education for the benefit of students residing in the district), seeking the defeat of a candidate for reelection to the board is not among such enumerated duties, such conduct thus is unrelated to Defendant School Board Members' official duties.[37] Moreover, as discussed, Discussion, *infra*, at 24-27, that Defendant School Board Members' assertion of official misconduct against Plaintiff based on Plaintiff's failure to complete timely the financial oversight training mandated by §2102-a was legally groundless further suggests Plaintiff's allegations place Defendants' actions well-beyond any "competence" relating to their official duties as School Board members that could have justified Defendants' actions. *See Lombardo*, 222 N.E.2d at 737 (citing *James v. Powell*, 200 N.E.2d 722 (N.Y. 1964) (upholding slander verdict against member of congress based on false accusation against plaintiff uttered during television interview)). Additionally, as Plaintiff has sufficiently alleged under Plaintiff's Second Claim asserting First Amendment retaliation, Discussion, *supra*, at 30-35, that Defendants School Board Members' adoption of the Statement of Charge was a pretext for Defendants' attempt to remove Plaintiff from the School Board based on Plaintiff's

---

[37] The court's perusal of New York's Education Law provisions defining the powers and duties of central school district board members fails to reveal any authority for such conduct as alleged by Plaintiff.

exercise of his First Amendment rights and in execution of his public duty to faithfully represent his constituents, subjecting Defendants to liability for such conduct therefore cannot be considered as a potential undue interference with the proper conduct of Defendants' official duties.  As the court in *Lombardo* stated, "'[i]n such case[ ], absolute privilege would 'do great harm to individual victims without improving the service of government.'" *Lombardo,* 222 N.Y.S.2d at 725 (quoting *Cheatum v. Wehle*, 159 N.E.2d 166, 170 (N.Y. 1966)).

The same may be said with regard to the form of the statements issued against Plaintiff by Defendant School Board Members alleged by Plaintiff in his Fourth Claim. In this case, the use of leaflets and a computerized website calculated to reach and influence voters to vote against Plaintiff in 2009 and 2010 are plausibly a form of adverse public statement against Plaintiff that was "totally unwarranted," by the requirements of Defendant School Board Members' official duties in acting against Plaintiff based on Plaintiff's supposed violation of § 2102-a.  *Lombardo*, 222 N.E.2d 724 (citing *Cheatum v. Wehle,* 159 N.E.2d 166 (N.Y. 1959); *Jacobs v. Herlands*, 17 N.Y.S.2d 711 (Sup. Ct. Kings Co.), *aff'd*, 19 N.Y.S.2d 770 (4th Dep't. 1940)).

Given that at the time of Plaintiff's 2009 and 2010 reelection efforts, no action to sustain the official misconduct accusation – the Statement of Charge – was ever taken by Defendant School Board Members following the 2008 reinstatement of Plaintiff by the Commissioner, there was no apparent justification, related to Defendant School Board Members' official duties, to bring this accusation to the public's attention in connection with Plaintiff's re-election attempts, thus rendering the form of communication at issue under Plaintiff's Fourth Claim plausibly "totally unwarranted"

and, consequently unprotected by New York's absolute privilege doctrine as applied to the actions and statements of public school boards of education.  *See Buffalo Bd. of Educ.*, 383 N.Y.S.2d at 737.  Certainly, it is difficult to perceive how the quality of public education services rendered by Defendant School District would be improved by immunizing such conduct from liability as Plaintiff has alleged.  *Id*.  Conversely, subjecting Defendant School Board Members to liability upon Plaintiff's claims is unlikely to harm the provision of public education in Defendant School District. Consequently, there is no reason to extend absolute immunity to Defendant School Board Members' misconduct at Plaintiff alleges.

Accordingly, not only were Defendants' acts in removing Plaintiff from the School Board were not legislative, but administrative in nature, *see Harhay*, 323 F.3d at 211; Siegel, at 960, such statements, as well as the alleged statements Defendant School Board Members circulated to the School District's registered voters in connection with the 2009 and 2010 School Board elections, were so far beyond the scope of Defendants' duties as School Board members, whether considered to be legislative or administrative in nature, as to be well beyond Defendants' "competence" with regard to official School Board duties.[38]  For the reasons stated, the court therefore finds *Lombardo* and *Buffalo Bd. of Educ.* inapposite to the issues presented on Defendants' motions and Defendant School Board members' assertions of absolute legislative privilege to be without merit.  Defendants' motions based on legislative privilege should

_____

[38] Contrary to the statement in *Buffalo Bd. of Educ., supra*, that "Boards of Education, no less than the legislative bodies expressly protected by the constitutional 'speech and debate' clauses, require free, open and vigorous discussion to illumine the deliberation of their members," *Buffalo Bd. of Educ.*, 383 N.Y.S.2d at 737 n. 2, *dicta*, other authority establishes that boards of education under New York law function as administrative, rather than legislative bodies.  *See* Discussion, *supra*, at 48-52 & n. 33.

be DENIED.

## 2.     Quasi-Judicial Immunity

Defendants alternatively maintain the proceedings Plaintiff challenges were quasi-judicial in nature and, thus, are absolutely immune from legal challenge.  School District's Memorandum at 10; Defendant School Board Members' Memorandum at 9-11.  Although conceding that the proceedings at the June 30, 2007 School Board meeting before Hearing Officer Griffin were quasi-judicial, Plaintiff maintains that because he challenges Defendant School Board Members' taking of the vote to remove Plaintiff from the School Board at the executive session as in violation of New York's Open Meetings Law, that the action was quasi-judicial is irrelevant because it was illegal, and therefore a nullity, under the New York statute.  Plaintiff's Memorandum at at 7-10.  In response, Defendant School District maintains that quasi-judicial proceedings are specifically exempt from New York's Open Meetings Law.  School District's Reply at 1-2.[39]

Preliminarily, the court observes that, as Defendants argue, quasi-judicial proceedings are specifically exempt from New York's Open Meetings Law.  N.Y. Pub. Off. Law § 108[1] ("§ 108[1]") (providing that New York's Open Meetings Law does not extend to "judicial or quasi-judicial proceedings . . . .").  Accordingly, if Defendant School Board Members' conduct challenged by Plaintiff was quasi-judicial in nature, § 108[1] does not require such actions be taken at an open public meeting of the School

_____

[39] Defendant School Board Members have not replied in further support of this aspect of their motion.

Board.  Plaintiff's concession, however, that such proceedings were quasi-judicial in nature is not dispositive because a litigant's concession on a question of law does not bind the court.  *Billing v. Credit Suisse First Boston Ltd.*, 426 F.3d 130, 167-68 (2d Cir. 2005) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("once an issue or claim is properly before a court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.")).  However, Defendants fail to explain how the removal of an elected School Board member constitutes a quasi-judicial determination.

"It is well-established that judges enjoy absolute immunity 'for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.'" *Gotbetter v. Wendt*, 371 Fed.Appx. 165, 166 (2d Cir. 2010) (civil rights action, quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (stating, in civil rights action, that "[a] judge will not be deprived of [judicial] immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." (further quotation omitted))).  "Such judicial immunity is conferred in order to insure 'that a judicial officer, in exercising the authority invested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (civil rights action, quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)).  An exception to judicial immunity applies only if the judge "'acted in the clear absence of all jurisdiction.'" *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997) (civil rights action, quoting *Stump*,

435 U.S. at 356-57). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waxo*, 502 U.S. 9, 11 (1991) (civil rights action, citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 11 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Judicial immunity also extends to "certain others who perform functions closely associated with the judicial process." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (internal quotation marks omitted)). To determine which persons are covered under such quasi-judicial immunity, "the Supreme Court follows a functional approach, under which absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual officer." *Id*. (quoting *Cleavinger*, 474 U.S. at 201 (internal quotation marks and brackets omitted). *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (extending absolute immunity to parole board officials performing quasi-judicial function in making parole decisions). "[P]roceedings are quasi-judicial if: (1) a hearing is held; (2) both parties may participate; (3) the presiding officer may subpoena witnesses; and (4) the body has the power to take remedial action." *Boice v. Unisys Corporation*, 50 F.3d 1145, 1150 (2d Cir. 1995) (citing *Toker v. Pollak*, 376 N.E.2d 163, 168-69 (N.Y. 1978)). A school board's participation in an administrative adjudication by engaging in fact finding, a hearing, or an adversary proceeding, may qualify as acting in a "quasi-judicial capacity." *See Venes v. Community School Bd. of Dist. 26*, 373 N.E.2d 987, 989 (N.Y. 1978) (finding defendant school board did not act in

quasi-judicial capacity in making decision to dismiss a probationary employee because the school board did not engage in fact finding, a hearing, or any adversary proceeding).

It is significant that, in this case, the court is unable to determine, based on the present record, precisely what, if any, proceedings were held before hearing officer Griffin, including whether such proceedings were judicial, quasi-judicial, or purely administrative in nature.  It is self-evident that Defendant School Board Members' assertion in the Statement of Charge and its subsequent adoption at the June 30, 2007 School Board meeting could not constitute a quasi-judicial determination as, at that time, the one-year for Plaintiff's and Stepien's compliance with § 2102-a and Board Policy 2231 had not expired, and the Commissioner later held, Commissioner's Decision at 4, it was, as a mater of New York law, premature, thus removing any legal basis for adopting the Statement of Charge and rendering Defendant School Board Members' actions *ultra vires* under § 1709[18] as of June 30, 2007, the date of Plaintiff's removal from the School Board.

Further, it is equally dubious that Plaintiff's and Stepien's failure to comply with § 2102-a[1] requirements constitutes official misconduct under § 1709[18] sufficient to warrant Plaintiff's removal and Defendant School Board Members' fail to point to any New York caselaw construing § 1709[18] to encompass such a determination and subsequent removal, and the court's research also fails to reveal any such authority. Rather, the scant available caselaw construing § 1709[18] suggests that its use of the term "official misconduct," in sharp contrast to Plaintiff's belated but successful financial oversight training compliance in this case, involves misconduct rising to a misdemeanor

offense, *see*, *e.g.*, *Komyathy v. Board of Ed. of Wappinger Central School Dist. No. 1*, 348 N.Y.S.2d 28, 33-34 (Sup.Ct., Dutchess Cnty 1973) (removal for official misconduct of school board member who physically assaulted another school board member). *Cf. Tasch v. Board of Educ. of City of New York*, 770 N.Y.S.2d 430, 430-31 (3d Dep't. 2004) (affirming lower court's decision that charges amounting to criminal activity constituted official misconduct under New York Penal Law § 105 supporting six-month suspension from school board duties of plaintiff employee). Accordingly, Defendant School Board Members' actions could be found to have constituted an unlawful administrative action under state law, not the exercise of quasi-judicial authority, which directly impaired Plaintiff's liberty interest to hold public office as a duly elected member of the School Board, violating Plaintiff's right to due process protection of this liberty interest as well as to free speech.

In short, if Defendant School Board Members were without any proper legal predicate to act against Plaintiff, their actions, as challenged by Plaintiff, could not be quasi-judicial; rather, upon Plaintiff's plausible allegations, Defendants' conduct may be found to have constituted an arbitrary and unlawful exercise of executive or administrative power. Significantly, § 2102-a[1] provides for no sanctions, let alone any removal sanction pursuant to § 1709[18], to either a non-compliant school board member or the respective board based on a failure to timely comply with its requirements.

Moreover, as discussed, Discussion, *supra*, at 24-27, whether Plaintiff's failure to complete the financial oversight training as of June 19, 2007, when Defendant School Board Members issued the Statement of Charge, constituted official misconduct,

remains an open issue.  Because Plaintiff's allegations indicate the initial decision to issue the Statement of Charge and the subsequent removal vote did not occur in a quasi-judicial setting but, rather, at a regularly schedule School Board meeting, Defendants' actions are not protected by judicial or quasi-judicial immunity.  *See Bliven*, 579 F.3d at 210 (holding administrative decisions, even when made by a judge, are not judicial acts entitled to judicial immunity).  Rather, the court finds Plaintiff has alleged that Plaintiff's removal was effectuated by Defendant School Board Members' exercise of their administrative powers pursuant to a grant of authority under § 1709[18], an authority that is neither legislative nor quasi-judicial in nature.[40]

Thus, on this record, with regard to the decision to remove Plaintiff from the School Board, the court is unable to determine whether Defendants are entitled to absolute immunity because of the judicial or quasi-judicial nature of the conduct at issue as Defendants, on their motions to dismiss, have asserted and, with regard to the earlier decision to issue the Statement of Charge, because such decision was not, according to the pleadings, made during any apparent judicial or quasi-judicial proceedings, Defendants' decision is not entitled to absolute immunity from remedies available under § 1983.  There is, therefore, no merit to this argument in support of Defendants' requests to dismiss for failure to state a claim on the ground of Defendants' legislative or quasi-judicial immunity.[41]

---

[40] The court therefore does not need to address whether Defendant School Board Members' failure to conduct the proceedings on Plaintiff's removal in an open public forum violated New York Open Meetings Law.

[41] The court notes that Defendant School Board Members' argument that Plaintiff had no liberty interest in retaining his elected School Board position, Defendant School Board Members' Memorandum at 4, is inconsistent with their argument that Defendants' actions in terminating Plaintiff were quasi-judicial

Accordingly, insofar as Defendants assert they are absolutely immune from liability in this action and that, on that basis, Plaintiff has failed to state a claim, Defendants' motions should be DENIED.

## B.    Qualified Immunity

Alternatively, Defendant School Board Members assert they are entitled to qualified immunity on Plaintiff's § 1983 civil rights claims.  Defendant School Board Members' Memorandum at 12-14.  Plaintiff has not responded in opposition to this argument, a fact upon which Defendant School Board Members rely in replying in further support of their motion.  Defendant School Board Members' Reply at 7.

"Qualified immunity is an affirmative defense designed to 'protect [ ] the [defendant public] official not just from liability but also from suit . . . thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial.'" *Amore v. Novarro*, __ F.3d __, 2010 WL 3960574, *4 (2d Cir. 2010) (quoting *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999) (brackets and bracketed text in original)).  Qualified immunity is sufficient to shield officials "from civil liability under § 1983 if either '(1) their conduct did not violate clearly established rights of which a

---

in nature given that Plaintiff  "was given formal notice of the charges, had an opportunity and mechanism to challenge whether the hearing should go forward and had an opportunity to confront witnesses and evidence against him, as well as present proof, all before a neutral hearing officer.  The mechanism for appeal was also in place and followed by Plaintiff."  Defendant School Board Members' Memorandum at 9.  The conceded necessity to follow such due process provisions prior to removing Plaintiff from the School Board strongly implies that Plaintiff had a protected liberty interest, acknowledged by Defendant School Board Members, in retaining his elected position as a member of the School Board.  Simply, if as Defendant School Board Members contend, Plaintiff lacked a protected liberty interest in retaining his position, no procedures, quasi-judicial or otherwise, were prerequisite to removal and would not have been required as a matter of constitutional requirement, the very basis upon which Defendants' assert this immunity against Plaintiff's § 1983 claims.

reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights.'" *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010) (quoting *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998) (additional quotation omitted)). *See Velez*, 401 F.3d at 100 ("It is well-established that defendants are shielded by qualified immunity as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (italics in original) (quoting *Young*, 160 F.3d 899, 903 (2d Cir. 1998)). *See also Velez*, 401 F.3d at 100 ("A right is clearly established if its 'contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Ultimately, '[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.'" *Velez*, 401 F.3d at 100 (quoting *McCullough v. Wyandanch Union Free Sch.*, 187 F.3d 272, 278 (2d Cir. 1999)).

Significantly, with regard to the instant case, Defendants' alleged conduct underlying Plaintiff's Fourteenth Amendment procedural due process, based on "stigma-plus," and First Amendment retaliation claims was in violation of Plaintiff's constitutional rights that were clearly established as of June 19, 2007, when Defendant

School Board Members adopted the Statement of Charge such that Defendants should have understood their conduct, as alleged by Plaintiff, was unlawful.  *See Velez*, 401 F.3d at 100-02 (holding chancellor of city school district, an official with removal powers over the plaintiff, not entitled to qualified immunity on community school board member's claims challenging removal from school board (1) without prior hearing depriving removed board member of "stigma-plus" liberty interest without procedural due process, and (2) to retaliate against board member for political views expressed while performing board duties).  Accordingly, Defendant School Board Members' actions are not qualifiedly immune from liability based on Plaintiff's Fourteenth Amendment procedural due process and  First Amendment retaliation claims in the instant case.

Nor does the fact that Commissioner Mills found that Defendant School Board Members acted in "good faith" in pursuing Plaintiff's removal, Commissioner's Decision at 4, entitle Defendant School District to qualified immunity, as the School District suggests. School District's Memorandum at 1, 4.  Interestingly, Defendant School Board Members do not assert that the Commissioner's good faith finding supports qualified immunity as to their individual conduct.  Unlike an individual defendant, a government entity defendant's "good faith" is not a ground for qualified immunity in a § 1983 action. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (qualified immunity is government official's personal privilege for official acts and does not belong to government entity). *See also Vives v City of New York*, 524 F.3d 346, 350 (2d Cir. 2008) (holding that unlike individual defendants, a municipality, although a "person" within the meaning of § 1983, may not assert qualified immunity based on its good faith

belief that its actions or policies are constitutional).  Moreover, such statement by the Commissioner was mere *dicta*, and was relevantly directed, if at all, only to whether Defendants were entitled to have the costs of defending Plaintiff's appeal to the Commissioner levied as a tax upon the district in accordance with N.Y. Educ. Law § 3811 ("§ 3811").  *Id*.  As relevant, § 3811 provides that whenever any school board member defends any action before the commissioner of education, arising out of the exercise of the powers or the performance of duties as a school board member, all reasonable costs and expenses, as well as all costs and damages adjudged against the school board member, shall be a district charge and shall be levied by tax upon the district provided that, *inter alia*, the commissioner certifies that the school board member "appeared to have acted in good faith with respect to the exercise of his powers or the performance of his duties [as a school board member]."  N.Y. Educ. Law § 3811[1].  Thus, Commissioner Mills's finding that Defendant School Board Members had acted in "good faith," regardless of its actual correctness given the substantial legal deficiencies in the removal procedures used by Defendant School Board Members against Plaintiff, apparent from Plaintiff's allegations, in attempting to remove Plaintiff from the School Board in June 2007, as well as Defendant Schaubert's dysfunction of Plaintiff's effort to comply with § 2102-a, pertained only to whether the costs of defending the appeal should be borne by the taxpayers of the School District, or personally by Defendant School Board Members.  The Commissioner's finding on this point was therefore irrelevant to Defendants' assertion of qualified immunity as a defense to Plaintiff's § 1983 claims in this action.

     Defendants' motions to dismiss based on qualified immunity should be DENIED.

## 4.    *Res Judicata*

Buried within the School District's argument regarding absolute immunity is an assertion that Plaintiff's commencement of a prior action in New York Supreme Court, Niagara County, on March 11, 2008, against Schaubert and Palmeri, as well as several media companies who published news stories about the lack of civility among members of the School Board, bars Plaintiff from proceeding on the claims asserted in the instant action.  School District's Memorandum at 12-13.  Defendant School Board Members do not assert a similar argument.

New York law provides that *res judicata* precludes a claim where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (*citing Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)).  Claim preclusion, however, is not a jurisdictional matter, nor one relevant to the sufficiency of a claim unless *res judicata* appears from the pleadings, but, rather, is an affirmative defense.  *See Exxon Mobil Corp. v. Saudi Basic Industries, Corp.*, 544 U.S. 280, 293 (2005) (citing Fed. R. Civ. P. 8(c) (listing *res judicata* as an affirmative defense).

In the instant action, Defendant School District has yet to file an answer.  "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (citing cases).  Here, however, the Complaint is devoid of any reference to the earlier litigation on which Defendant School

District relies in support of this argument.  As such, Defendant's *res judicata* affirmative defense cannot be reached on the instant motions, and need not be addressed.

**<ins>CONCLUSION</ins>**

Based on the foregoing, Defendant School District's motion (Doc. No. 11) should be GRANTED in part and DENIED in part; Defendant School Board Members' cross-motion (Doc. No. 14) should be GRANTED in part and DENIED in part.  The case should be remitted to the undersigned for scheduling a conference pursuant to Fed.R.Civ.P. 16(b).

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December <ins>16</ins>, 2010
               Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     December 16, 2010
           Buffalo, New York