UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDWARD LILLY,

                         Plaintiff,

       v.                                    **DECISION AND ORDER**
                                             10-CV-548-WMS
LEWISTON-PORTER CENTRAL
SCHOOL DISTRICT, DAVID SCHAUBERT,
LOUIS PALMERI, ROBERT LAUB, and
JAMES MEZHIR,

                         Defendants.

## I. INTRODUCTION

This action under 42 U.S.C. § 1983 and state tort law is brought by a former elected member of the Lewiston-Porter School Board against the Lewiston-Porter Central School District and current/former School Board members David Schaubert, Louis Palmeri, Robert Laub, and James Mezhir. Plaintiff Edward Lilly asserts Defendants violated his constitutional rights and committed malicious prosecution and intentional infliction of emotional distress in charging Plaintiff with official misconduct and removing him from the School Board. (Docket No. 1.) The individual Defendants are sued in both their official and individual capacities. (Compl. ¶ 10.) Plaintiff seeks both compensatory and equitable relief. (Compl. at p. 14.)

Pending before this Court is the Report and Recommendation of the Honorable Leslie G. Foschio, United States Magistrate Judge, making recommendations on motions to dismiss filed by Defendants. (Docket No. 19 ("R&R").) Judge Foschio recommends granting the motions with respect to the claim for malicious prosecution, but denying them

1

in all other respects.  Defendants have filed objections to the recommendations, seeking dismissal of all claims against them.  (Docket Nos. 23, 24.)  Plaintiff filed a response to Defendants' objections (Docket No. 26), and Defendants filed replies to Plaintiff's response.[1]  (Docket Nos. 27, 28.)

For the reasons discussed below, this Court will adopt Judge Foschio's recommendations in part and set aside the recommendations in part.

## II.  BACKGROUND

### A.  Factual Background

Plaintiff Edward Lilly is a former elected member of the Lewiston-Porter School Board ("School Board").  (Compl. ¶ 13.)  Plaintiff was first elected to the School Board in 1997; he was subsequently elected to additional terms in 2000, 2003, and 2006.  (Compl. ¶ 13.)  During Plaintiff's term in office, he and fellow School Board member Scott Stepien had a publicly antagonistic relationship with the Defendant School Board members. (See Compl. ¶¶ 35-38.)  Plaintiff alleges the School Board Defendants had "great personal animus" toward him.  (Compl. ¶ 38.)

In 2005, New York enacted a law requiring all school board members to complete, within the first year of their term in office, a training course on financial oversight, accountability, and fiduciary responsibilities.  (R&R at 5 (citing New York Education Law § 2102-a[1]).)  This law was codified as part of School Board policy in 2006.  (R&R at 5.)

---

[1]On June 21, 2011, Defendants jointly moved for leave to file a supplemental memorandum of law in support of their objections to the R&R.  (Docket No. 29 and attached exhibits.)  This Court granted the motion.  (Docket No. 31.)  Plaintiff filed a response to this submission.  (Docket No. 32.)

It is undisputed that Plaintiff was required under these provisions to complete the financial oversight training before the end of the first year of the term that commenced July 1, 2006. (R&R at 5.)  Plaintiff does not dispute that he was aware of this requirement.  (R&R at 5.)

On June 19, 2007, Defendant David Schaubert, then the President of the School Board, issued a Statement of Charge under New York Education Law § 1709(18) against Plaintiff.[2]  (Compl. ¶ 14.)  Plaintiff was charged with failing to timely complete the financial oversight training.  (Compl. ¶ 14.)  Because there were still several days left in the first year of his term, Plaintiff immediately attempted to register for an online financial oversight training course.  (Compl. ¶ 15.)  However, Plaintiff alleges Defendant Schaubert thwarted his efforts to comply with the requirement by telling the School District Clerk administering the course not to allow Plaintiff to register.  (Compl. ¶15.)

Next, Plaintiff attempted to register for another training course being given in a classroom setting by the Board of Cooperative Educational Services ("BOCES").  (Compl. ¶ 17.)  But Defendant Schaubert emailed Dr. Godshall, the BOCES superintendent, and stated: "As for the charges against Mr. Lilly and Mr. Stepien that were voted on last night; I know Mr. Lilly is tight with BOCES but all I can ask is 'don't do them any favors.'  Let the legal process work as it is written."  (Compl. ¶ 18.)  Plaintiff alleges Dr. Godshall ignored this email and attempted to help Plaintiff register.  (Compl. ¶ 19.)  However, Dr. Godshall purportedly was told by Mr. Kremer, the Executive Director of the New York State School Board Association, that Mr. Kremer "had been contacted by Defendant Schaubert and was

---

[2]New York Education Law § 1709(18) provides a board of education has the power "[t]o remove any member of their board for official misconduct.  But a written copy of all charges made of such misconduct shall be served upon him at least ten days before the time appointed for a hearing of the same; and he shall be allowed a full and fair opportunity to refute such charges before removal."

told not to allow Plaintiff and Mr. Stepien to register for the course."  (Compl. ¶ 20.)

Plaintiff was unable to register for any course prior to the end of the first year of his term; he was, however, able to register for a course on July 28, 2007.  (Compl. ¶ 21.) Plaintiff completed the course on that date.  (Compl. ¶ 22.)

The School Board convened a special meeting on June 30, 2007.  (Compl. ¶ 24.) At the meeting, the Board considered the Statement of Charge against Plaintiff and Stepien, who also had been accused of failing to timely complete the required training.[3] (Compl. ¶ 24.)  The Statement of Charge sought the removal of Plaintiff and Stepien from the Board.  (Compl. ¶ 23.)  A Hearing Officer, Richard F. Griffin, was appointed to oversee the proceedings.  (Compl. ¶ 25.)  The Board began with a public hearing, then proceeded in a closed executive session.  (Compl. ¶ 25.)  During the executive session, four Board members – Defendants Schaubert, Palmeri, Laub, and Mezhir – signed a statement finding Plaintiff and Stepien guilty of violating the training requirement, and providing they should be removed from the Board for official misconduct.  (Compl. ¶¶ 25-27.)  Plaintiff and Stepien apparently were present for the executive session; they opposed the misconduct finding and the vote for their removal.  (Compl. ¶¶ 25-27.)  After the executive session vote, the Board's findings and decision were given to the Hearing Officer, who read them in open session.  (Compl. ¶¶ 28-29.)  After Plaintiff and Stepien were removed, Robert Weller and Bonnie Gifford were appointed to the School Board as their replacements.  (R&R at 10-11.) Defendants Schaubert and Palmeri completed their terms of office and vacated their Board seats on June 30, 2007, just after the special Board meeting.  (R&R at 10.)

---

[3]Plaintiff alleges all of the individual Defendants knew he was registered for the July 28, 2007 training course at the time of the removal hearing.  (Compl. ¶ 51.)

4

Plaintiff and Stepien appealed the removal decision to the State Commissioner of Education. (Compl. ¶ 31.) Plaintiff and Stepien argued the charge of misconduct and the removal decision were premature because there were several days remaining in the first year of the term at the time they were removed. (Compl. ¶ 31.) Plaintiff demanded reinstatement to his Board office. (Compl. ¶ 32.)

On March 25, 2008, the State Commissioner of Education granted the petition. (Compl. ¶ 33.) The Commissioner ruled the removal of Plaintiff from his Board office was premature because he had not yet failed to comply with the first-year training requirement at the time of his removal. (Compl. ¶ 33.) Plaintiff and Stepien were reinstated to their Board positions. (Compl. ¶ 34.)

In 2009 and 2010, Plaintiff ran for re-election to the School Board. (Compl. ¶¶ 54, 57.) In both elections, the individual Defendants distributed fliers advising voters not to vote for Plaintiff. (Compl. ¶¶ 55, 58.) Plaintiff lost both elections. (Compl. ¶¶ 56, 60.)

**B. Procedural Background**

Plaintiff, through counsel, brought this § 1983 suit against Defendants Schaubert, Palmeri, Laub, and Mezhir in their individual and official capacities, alleging violations of his constitutional rights. Reading the Complaint liberally, Plaintiff alleges Defendants violated his constitutional right to procedural due process in removing him from the School Board. Plaintiff also claims Defendants violated his First Amendment rights by removing him in retaliation for his political views as a Board member. (See Compl. ¶¶ 68, 71.)

Plaintiff also brings state-law claims of malicious prosecution and intentional infliction of emotional distress against the individual Defendants. (Compl. at pp. 12-13.) Finally, Plaintiff alleges the School District is liable for the conduct of the individual

Defendants under a theory of *respondent superior*.  (Compl. ¶ 80.)

### 1.  Plaintiff's State Suits

Prior to filing this action, in March 2008, Plaintiff filed a suit in the New York Supreme Court, County of Niagara, against Defendants Schaubert, Palmeri, and others. Plaintiff alleged Defendants libeled and slandered Plaintiff in various public statements. (Docket No. 11, Ex. 6.)  Plaintiff did not raise any claims of malicious prosecution or intentional infliction of emotional distress in that suit.  The state court granted a motion for summary judgment, in part on the ground that the statements of Defendants Schaubert and Palmeri during the meeting were absolutely privileged.  (Id.)

Plaintiff filed a second lawsuit against Defendant Schaubert in state court on June 30, 2008, again alleging libel and slander.  (Docket No. 11, Ex. 7.)  Plaintiff voluntarily dismissed this suit on September 8, 2008.  (Docket No. 11, Ex. 8.)

### 2.  Stepien's Federal Suit

On June 30, 2008, Stepien filed a suit in this District, which was heard by the Honorable Richard J. Arcara, United States District Judge.  See Stepien v. Schaubert, et al., Case No. 1:08-CV-487, 2010 WL 1875763 (Feb. 23, 2010) (Report and Recommendation of the Honorable Hugh B. Scott, United States Magistrate Judge). Stepien sued Defendants Schaubert, Palmeri, Laub, and Mezhir, along with F. Warren Kahn, Karl W. Kristoff, and Hodgson Russ LLP.  Stepien claimed the defendants violated his civil rights and committed libel and slander in removing him from the Board.  Id., at *4.

Judge Scott issued a Report and Recommendation recommending the defendants' summary judgment motions be granted.  Id., at *9.  With respect to Stepien's claim under § 1983 against the School Board defendants, Judge Scott concluded the defendants were

entitled to absolute legislative immunity for their conduct in removing Stepien from the Board.  Id., at *8; see id., at *8 n.10 ("The removal of a public official, akin to impeachment, is different in nature and character than administrative personnel determinations such as the termination of a Board employee.").    Judge Arcara adopted Judge Scott's recommendations in their entirety.  (Case No. 1:08-CV-487, Docket No. 92.)

Stepien appealed the dismissal of his suit to the Court of Appeals for the Second Circuit.  Stepien v. Schaubert, et al., 424 Fed.Appx. 46 (2d Cir. 2011) (summary order).  On June 13, 2011, the Second Circuit affirmed the decision below on the ground that the defendants were entitled to qualified immunity for their conduct.  Id. at 48.  The Stepien court stated:

> Our precedents do not make clear whether, under New York law, school board members can act in a legislative capacity.  However, we need not resolve that question.  Even assuming arguendo that the Board member defendants here did not act in a legislative capacity in bringing misconduct charges against Stepien and voting to remove him from office, they are entitled at the very least to qualified immunity from Stepien's § 1983 claims, since they acted at all relevant times in their official capacities and in a manner that was not objectively unreasonable.

Id. (citing Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211-12 (2d Cir. 2003)).

The court went on:

> Although the Commissioner ultimately concluded that the charges brought against Stepien were premature, neither (1) the Board's decision that Stepien's failure to obtain training required by state law, despite numerous notices of the requirement and of the way to obtain the training, constituted "official conduct" warranting removal, . . . nor (2) its conclusion that it was appropriate to bring the charge when only a few days remained in Stepien's term, given that no training sessions were scheduled during those days, was objectively unreasonable.

7

Id. (internal citations omitted).

### 3. The Magistrate Judge's Recommendation

Defendants in this case filed motions to dismiss the Complaint. (Docket Nos. 11, 14.) On December 16, 2010, Judge Foschio issued the Report and Recommendation at issue here. (Docket No. 19.) Judge Foschio's recommendations were made prior to the Second Circuit's affirmance in Stepien.

With respect to Plaintiff's claim under § 1983, Judge Foschio first concluded the Complaint adequately alleged Plaintiff was deprived of a constitutionally protected "stigma-plus" liberty interest when he was removed from the School Board. (R&R at 21-27.) Next, Judge Foschio determined Plaintiff had stated a claim that the pre-deprivation process he received "fell far short" of what was constitutionally required. (R&R at 28.) Judge Foschio noted that the allegation Defendant Schaubert had interfered with Plaintiff's attempt to register for the required training course before the deadline, "if true, provides strong potential evidence that an adverse finding [at the June 30, 2007 hearing] was a foregone conclusion, negating any realistic possibility that Plaintiff would receive an impartial hearing . . . a basic prerequisite of procedural due process." (R&R at 29.) Judge Foschio further determined the reinstatement decision by the Commissioner of Education "did not specifically exonerate Plaintiff nor completely clear Plaintiff's reputation, such that the post-deprivation relief Plaintiff received was not complete or effective." (R&R at 29.) Judge Foschio concluded Plaintiff also had adequately stated a claim for First Amendment retaliation, based on the allegations that Defendants had ousted Plaintiff from his School Board seat and defamed Plaintiff in subsequent election campaigns because Plaintiff had often espoused positions opposing those of the Board Defendants. (R&R at 32-35.)

Addressing the state claims, Judge Foschio recommended Plaintiff's claim for malicious prosecution be dismissed, because the Complaint did not sufficiently allege the removal proceedings against Plaintiff had been terminated in Plaintiff's favor, as is required to establish malicious prosecution under New York law.  (R&R at 37-38.)

With respect to the claim for intentional infliction of emotional distress, Judge Foschio rejected Defendants' argument that the claim was barred by the one-year statute of limitations.  Judge Foschio concluded the Complaint alleged an ongoing injury to Plaintiff because he had never been fully exonerated from the "official misconduct" charges and because Defendants "continued to release defamatory statements" about Plaintiff during the 2009 and 2010 election campaigns.  For that reason, the "continuing violation" doctrine tolled the statute of limitations.  (R&R at 39-40.)

Judge Foschio also concluded, to the extent the intentional infliction of emotional distress claim could also be construed as a defamation claim – based on the statements made about Plaintiff in the 2007 hearing and in the 2009 and 2010 elections – the statute of limitations barred any defamation claim stemming from statements made during the 2007 hearing and 2009 campaign.  However, Judge Foschio found that to the extent the claim was based on statements made during the 2010 campaign, it was timely.  (R&R at 40-41.)

Defendants argued that in bringing the state claims, Plaintiff had failed to comply with a statutory requirement that, prior to bringing a tort suit against the School District or a School Board member, and within "ninety days after the claim arises," Plaintiff file a notice of claim.  See New York General Municipal Law § 50-e(1)(a).  Plaintiff did not dispute Defendants' argument in this regard, and Judge Foschio noted this failure

9

precluded Plaintiff from asserting his claim for malicious prosecution.   (R&R at 44.)
Nonetheless, Judge Foschio found the 90-day statutory period was tolled with respect to
the intentional infliction of emotional distress claim because of the continuing nature of the
alleged violation.   (R&R at 42.)   Additionally, Judge Foschio found the notice of claim
provision would not necessarily bar a defamation claim arising from the 2010 campaign,
because Plaintiff could, under the statute, apply to state court for leave to file a late notice
of claim.[4]  (R&R at 43.)

Judge Foschio considered and rejected Defendants' contention that the federal and
state claims were subject to dismissal on the grounds of either absolute or qualified
immunity.   With respect to the defense of absolute immunity, while noting Plaintiff had
conceded Defendants had absolute immunity for their conduct in the open hearing, (R&R
at 46), Judge Foschio concluded that Defendant School Board members acted in an
administrative capacity, rather than in a legislative or quasi-judicial role, when they voted
in executive session to remove Plaintiff from the Board.   (R&R at 64.)   In this regard,
Judge Foschio stated:

> [D]espite the similarity of the parties and allegations [in this
> case and Stepien], given the important issues presented in the
> instant action based on the removal of a duly elected school
> board member for failure to timely complete the financial
> oversight training, based on the secretive nature of the
> procedure utilized by Defendant School Board Members in
> effecting Plaintiff's removal raising, as discussed . . . serious
> issues of state law, and violations of Plaintiff's First and
> Fourteenth Amendment rights, the court declines to adopt the
> legal findings in Stepien, particularly as to Defendants'

---

[4]In sum, on the state claims, Judge Foschio recommended the claim for malicious prosecution be
dismissed, the claim for intentional infliction of emotional distress not be dismissed, and the "implied"
claim for defamation be dismissed as untimely with respect to statements made in connection with the
2007 hearing and 2009 campaign.  (R&R at 43-44.)

immunity assertions, with regard to the instant case.

(R&R at 48-49.)

Despite the fact that Plaintiff did not respond to Defendants' argument that they were entitled, as a matter of law, to qualified immunity from liability for the § 1983 claims, Judge Foschio rejected the argument and found qualified immunity did not apply.  (R&R at 67.)  Judge Foschio concluded Defendants' conduct "was in violation of Plaintiff's constitutional rights that were clearly established as of June 19, 2007, when Defendant School Board Members adopted the Statement of Charge such that Defendants should have understood their conduct, as alleged by Plaintiff, was unlawful."  (R&R at 66-67.)

Finally, Judge Foschio determined that despite the fact that Plaintiff had previously sued Defendants Schaubert and Palmeri for defamation in state court, the doctrine of *res judicata* did not bar Plaintiff from asserting any of the claims against the same Defendants.  Judge Foschio concluded it was premature to invoke a *res judicata* defense, because such a defense was not apparently applicable from the face of the Complaint.  (R&R at 69-70.)

Defendants filed objections to the R&R.  Plaintiff responded to the objections, and Defendants filed replies to Plaintiff's response.  Defendants then filed supplemental papers after the Second Circuit affirmed Judge Arcara's ruling in Stepien; Plaintiff filed a response thereto.

## III.  DISCUSSION

### A.  Legal Standards

Under 28 U.S.C. § 636(b)(1), if objections are made to a magistrate judge's report and recommendation regarding a dispositive matter, the district court must make a *de novo*

determination of any disputed findings and conclusions.  28 U.S.C. § 636(b)(1).  The court may accept, reject, or modify any of the proposed findings and recommendations of the magistrate judge.  Id.

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  When determining whether a complaint states a claim, the court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  Although the complaint need not include detailed factual allegations, the plaintiff must show the "grounds of his entitlement to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555,127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id.;  Goldstein, 516 F.3d at 56.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

## B.  § 1983 Claims

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  To prevail on a claim under § 1983, a plaintiff must allege (1) "that some person has deprived him of a federal right," and (2) "that the person who has deprived him of that right acted under color of state . . . law."  Velez v. Levy, et al., 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S.

12

635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

On its own, § 1983 does not provide a source of substantive rights, but rather a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689,  61 L.Ed.2d 433 (1979)).

### 1.  Defendant Schaubert

This Court agrees with Judge Foschio insofar as he concluded Plaintiff has sufficiently stated a claim against Defendant Schaubert for a violation of his right to procedural due process and for First Amendment retaliation.  At the outset, for the reasons stated in the R&R, this Court agrees Plaintiff was subjected to a "stigma-plus" liberty interest deprivation when he was found guilty of official misconduct and ousted from office. (R&R at 21-27.)

According to the Complaint, Defendant Schaubert issued the Statement of Charge against Plaintiff on June 19, 2007, then personally interfered with Plaintiff's attempt to register for the required training before the deadline, thereby entrapping Plaintiff into violating the training requirement.  (Compl. ¶¶ 14-20.)  This allegation, if proven, indicates the misconduct charges brought by Defendant Schaubert against Plaintiff were, from the beginning, unnecessary, trumped-up, and tainted.  This conduct facilitated the June 30, 2007 misconduct hearing, at which Plaintiff was found guilty of misconduct and ousted from office.  (Compl. ¶¶ 25-27.)

A liberal reading of the Complaint reveals these actions were undertaken by Defendant Schaubert in retaliation for Plaintiff's contrary political views.  Additionally,

Plaintiff alleges Defendant Schaubert brought the misconduct charge prematurely (*i.e.*, before the end of Plaintiff's first year in office) so as to ensure Plaintiff would be removed from office before Defendant Schaubert's own term of office expired on June 30, 2007. (Compl. ¶ 52.)

The allegations against Defendant Schaubert are similar to those in Velez v. Levy, 401 F.3d 75 (2d Cir. 2005). There, the plaintiff, Velez, was an elected member of a community school board in New York City. Id. at 80. Velez had a contentious political relationship with several other members of the community school board. Id. at 81. Velez was accused by other board members of leaving a board meeting, proceeding to the office of the acting superintendent, sprinkling a suspicious pink powder in front of the office door, and leaving a bag with additional powder nearby. Id. at 81-82. The board members complained to Chancellor Levy and requested Velez's removal from the community school board. Id. at 82. Chancellor Levy oversaw an allegedly shoddy investigation and ultimately decided to remove Velez from her office without a pre-deprivation hearing, describing her conduct as potentially "criminal in nature." Id. at 82-83. On appeal to the city board of education, the removal decision was overturned and Velez was reinstated to her position. Id. at 83.

In evaluating Velez's § 1983 claim on appeal from a Rule 12(b)(6) dismissal, the Second Circuit noted that "it has long been settled that due process generally requires a state to afford its citizens 'some kind of hearing' prior to depriving them of liberty." Id. at 101 (citing Hodel v. Virginia Surface Mining Reclamation Assoc., 452 U.S. 264, 299, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)). Because no pre-deprivation hearing had been afforded by Chancellor Levy on the allegedly trumped-up charges, the court held Velez had stated

a claim against Chancellor Levy for a violation of procedural due process.  Id. at 93.

Additionally, the court concluded Velez had stated a claim against Chancellor Levy for First

Amendment retaliation.  Id. at 98.  The court stated: "In the light most favorable to the

plaintiff, her basic allegation, that Levy took concrete actions to effectuate her removal from

the board in retaliation for her political positions, suffices to state a constitutional claim of

this sort."  Id.

    As in Velez, if it is proven here that Defendant Schaubert interfered with Plaintiff's

attempt to comply with the training requirement in a timely fashion while pursuing

misconduct charges and removal proceedings against him, all in retaliation for Plaintiff's

contrary political views, this would establish  Defendant Schaubert violated Plaintiff's rights

to procedural due process and under the First Amendment.  (See R&R at 28-29; 32.)

    This Court further agrees with Judge Foschio's conclusion that neither absolute nor

qualified immunity should, at this time and without further factual development, shield

Defendant Schaubert from liability under § 1983 for bringing misconduct charges and

removal proceedings against Plaintiff under the circumstances alleged.  (See R&R at 48-

49; 64; 66-67.)

    The test for determining whether absolute legislative immunity applies "turns on the

nature of the act, rather than on the motive or intent of the official performing it."  Harhay

v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003) (quoting Bogan v.

Scott-Harris, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998)).  "In order for

legislative immunity to attach, the act in question must be taken 'in the sphere of legitimate

legislative activity,'" and be the sort of "broad, prospective policymaking that is

characteristic of legislative action."  Id. at 210-11 (quoting Bogan, 523 U.S. at 54).  The

alleged conduct of Defendant Schaubert in trumping up charges of misconduct against a fellow Board member does not fall into this category.[5]

"Public officials enjoy qualified immunity from suit for damages under 42 U.S.C. § 1983 for acts undertaken in their official capacity, unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known." Harhay, 323 F.3d at 211 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  Analysis of a qualified immunity defense consists of a three step inquiry:

> First, we must determine whether plaintiff has alleged a violation of a constitutional right.  Then we consider if the violated right was clearly established at the time of the conduct. . . .  Finally, if plaintiff had a clearly established, constitutionally protected right that was violated by the actions of the Board, he or she must demonstrate that defendants' actions were not objectively unreasonable.

Harhay, 323 F.3d at 211 (internal citations omitted).

As discussed, Plaintiff's allegations against Defendant Schaubert state colorable claims under the Due Process Clause and the First Amendment.  Moreover, these rights were clearly established as of the time of Defendant Schaubert's actions.  Under the tenets of procedural due process, a deprivation may not be made on a tainted or fabricated premise.  See Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence

---

[5]Nor is absolute quasi-judicial immunity applicable to this conduct.  See generally Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), and Stump v. Sparkman, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)); Boice v. Unisys Corp., 50 F.3d 1145, 1150 (2d Cir. 1995) (a proceeding is quasi-judicial in nature if (1) a hearing is held; (2) both parties may participate; (3) the presiding officer may subpoena witnesses; and (4) the body has the power to take remedial action).

fabricated by a government officer.") (citing cases).   Additionally, clearly established law provides that "the exclusion of an officeholder from her office in retaliation for her political views is a violation of the First Amendment."  Velez, 401 F.3d at 101 (citing Bond v. Floyd, 385 U.S. 116, 137, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966)).   Moreover, the alleged conduct by Defendant Schaubert in entrapping Plaintiff into violating the training requirement, if proven, was "objectively unreasonable."   See Haiyan v. Hamden Public Sch., 2011 WL 2899089, *14 (D. Conn. July 15, 2011) (qualified immunity did not apply where school district defendants procured a stigmatizing, allegedly false statement implicating the plaintiff in a domestic attack, which statement was used to terminate her employment with the district).

In  sum,  for  the  foregoing  reasons,  this  Court  will  adopt Judge Foschio's recommendation that the § 1983 claims against Defendant Schaubert for violations of procedural  due  process  and  for  First  Amendment  retaliation – based  on  Defendant Schaubert's conduct in entrapping Plaintiff into violating the training requirement, bringing the Statement of Charge against Plaintiff, and removing Plaintiff from the Board – should not be dismissed at this stage of the litigation.[6]

### 2.  Defendants Palmeri, Laub, and Mezhir

Importantly, Plaintiff makes no allegation that the other individual Defendants – Palmeri, Laub and Mezhir – were personally involved in preventing him from timely completing the training requirement, or participated in or knew of Defendant Schaubert's alleged conduct.   While Plaintiff generally asserts the conduct of these Defendants was

---

[6]As discussed below, however, the Complaint fails to state a First Amendment retaliation claim with respect to Defendant Schaubert's alleged conduct in distributing negative fliers about Plaintiff during the 2009 and 2010 school board campaigns.

malicious in nature, his only specific allegations against them regarding his ouster from office arise from the June 30, 2007 hearing itself. (See Compl. ¶¶ 24-28, 39, 51, 53, 63-64.)

The findings of the Second Circuit in Stepien govern the question of whether Defendants Palmeri, Laub, and Mezhir should be entitled to qualified immunity on the due process and First Amendment retaliation claims. The Second Circuit evaluated the same proceedings Plaintiff challenges here and concluded Defendants were entitled to qualified immunity because they did not act in an objectively unreasonable manner as to Stepien. 424 Fed.Appx. at 48.  Although Stepien was issued as a summary order and does not carry precedential effect, 2d Cir. R. 32.1.1, the Second Circuit's conclusion is persuasive with respect to the conduct of Defendants against Plaintiff at that same hearing.[7]

Plaintiff has conceded that all of the Defendants are immune from liability for their conduct during the public portion of the hearing.  (Pl.'s Resp. to Mot. Dismiss at 6.) However, Plaintiff points out that, unlike Stepien, his particular challenge to the hearing is to Defendants' decision to vote on the misconduct charges in closed executive session. Plaintiff contends this violated New York's Open Meetings Law, Public Officers Law § 103, and therefore that Defendants should not be entitled to immunity.

It apparently is undisputed that the actual finding of official misconduct and the vote to remove were undertaken in executive session.  The Second Circuit in Stepien did not expressly address whether the decision to vote in executive session on the charges was

---

[7]To the extent Plaintiff alleges Defendants Palmeri, Laub, and Mezhir committed First Amendment retaliation against him in removing him from office based on his political views, this claim is foreclosed by the Second Circuit's rejection of Stepien's similar First Amendment retaliation claim on qualified immunity grounds.  424 Fed.Appx. at 48.

constitutionally acceptable.  This finding, however, is implicit from the court's conclusion that qualified immunity was applicable as to the entire proceeding.  424 Fed.Appx. at 48. Moreover, as discussed below, this Court concludes that voting in executive session was not unconstitutional under clearly established law or "objectively unreasonable," and therefore that the individual Defendants are entitled to qualified immunity with respect to their use of this process.

Initially, it is not clear from New York law that the voting on these issues was required to be held in open session.  Nothing in the removal provision of the Education Law explicitly requires removal proceedings against school board members to be open to the public.  See New York Education Law § 1709(18) (providing only that a board member brought up on official misconduct charges "shall be allowed a full and fair opportunity to refute such charges before removal.").  Further, Public Officers Law § 105 permits certain personnel decisions, including "matters leading to the appointment, employment, promotion, demotion, discipline, suspension, dismissal or removal of a particular person," to be made in executive session.[8]  New York Public Officers Law § 105; see also Town of Woodstock v. Goodson-Todman Enter., Ltd., 133 Misc.2d 12, 505 N.Y.S.2d 540, 548 (N.Y. Sup. 1986) (town board's decision to discuss in executive session allegations that town constables had been sleeping on duty was proper under § 105).

Assuming, *arguendo*, the vote in executive session on the misconduct charges was in violation of the New York Open Meetings Law, Plaintiff has cited no clearly established authority in the Supreme Court or Second Circuit providing such a violation would subvert

---

[8]Additionally, Public Officers Law § 108(1) exempts "quasi-judicial proceedings" from the open meeting requirement.

procedural due process.[9]   In general, procedural due process requires a party who was deprived of a property or liberty interest be afforded notice and an opportunity to be heard. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).  There is no specific, established constitutional requirement that a pre-deprivation hearing be public.  Moreover, it apparently is undisputed that Plaintiff was present during the executive session and participated in the voting during that session.  (Compl. ¶¶ 25-27.)  The facts as alleged do not state a claim that Defendants Palmeri, Laub, and Mezhir, by voting on Plaintiff's removal in executive session, violated Plaintiff's clearly established constitutional rights in an objectively unreasonable manner.

### 3.  Conduct by Defendants After Plaintiff's Removal from Office

The Complaint makes several allegations against the individual Defendants relating to their conduct against Plaintiff after his ouster.  Specifically, the Complaint alleges Defendants promulgated fliers encouraging voters not to vote for Plaintiff in the 2009 and 2010 School Board elections.  (Compl. ¶¶ 54-60.)  Judge Foschio construed the Complaint to allege these statements were made in retaliation for Plaintiff's political views.  He therefore found a First Amendment retaliation claim against Defendants could be predicated upon these allegations.  (R&R at 35.)

Assuming, *arguendo*, that Defendants acted as state actors in promulgating the fliers, this Court disagrees with Judge Foschio's conclusion that Plaintiff has stated a First Amendment retaliation claim based on Defendants' alleged conduct.  In order to establish

---

[9]Even under New York law, the burden is with the party asserting a violation of the Open Meetings Law to show the violation warrants a sanction or a nullification of the violative action.  New York Public Officers Law § 107; Matter of Griswald v. Village of Penn Yan, 244 A.D.2d 950, 665 N.Y.S.2d 177, 178-79 (N.Y.A.D. 4 Dep't 1997).

First Amendment retaliation, Plaintiff must prove (1) he has an interest protected by the First Amendment; (2) Defendants' actions were motivated or substantially caused by his exercise of that right; and (3) Defendants' actions effectively chilled the exercise of his First Amendment rights.  Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001); Heusser v. Hale, 777 F.Supp.2d. 366, 376 (D. Conn. 2011).

First, the Complaint bases the First Amendment retaliation claim solely on Defendants' conduct in "bringing Charges against Plaintiff and determining that Plaintiff [was] in violation of New York State Education Law and in deciding to remove Plaintiff from [the] School Board and in deciding not to allow Plaintiff to remain on [the] School Board." (Compl. ¶ 71.)  Plaintiff does not predicate his First Amendment claim on the alleged subsequent conduct of Defendants in distributing the negative fliers.

Second, nowhere in the Complaint does it allege that, as a result of Defendants' conduct in distributing the fliers, Plaintiff was effectively deprived of his ability to exercise his rights under the First Amendment.   Plaintiff does not allege he was actually or effectively unable to pursue his 2009 and 2010 election campaigns as a result of Defendants' counter-campaign.  As the Second Circuit stated in Curley:

> In the case at bar, despite plaintiff's charge that he was arrested in retaliation for his comments made during the 1993 mayoral campaign, he continued his 1994 campaign for village trustee even after the arrest and ran again for village public office in 1995.  Although plaintiff insists that his 1995 campaign was affected by his arrest . . . the fact remains that Curley chose to run for public office even after the events of August 1994.  Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.

268 F.3d at 73.  Thus, even reading the Complaint liberally, it does not state a claim for

First Amendment retaliation based on Defendants' alleged distribution of negative fliers.

In sum, this Court disagrees with Judge Foschio's conclusion that Plaintiff has stated § 1983 claims against Defendants Palmeri, Laub and Mezhir.  This Court also finds Plaintiff has failed to state a First Amendment retaliation claim against Defendant Schaubert based on his alleged involvement with the alleged distribution of fliers during the 2009 and 2010 campaigns.  These claims will be dismissed on the basis of qualified immunity and for failure to state a claim upon which relief may be granted.

## C.  State Claims

Plaintiff has asserted claims for malicious prosecution and intentional infliction of emotional distress.  (Compl. ¶¶ 73-78.) This Court agrees with Judge Foschio's conclusion that the claim for malicious prosecution should be dismissed on the ground it is time-barred, because Plaintiff did not timely file a notice of claim pursuant to New York law.  (R&R at 44.)

However, this Court disagrees with the conclusion that Plaintiff's intentional infliction of emotional dismiss claim should not be dismissed.  (R&R at 40.)  Under New York law, a claim for intentional infliction of emotional distress must be brought within one year of the accrual of the cause of action.   Passucci v. Home Depot, Inc., 67 A.D.3d 1470, 1471 (N.Y.A.D. 4 Dep't 2009).  Such a claim accrues at the time the plaintiff experiences severe emotional distress resulting from the defendant's extreme and outrageous conduct.  Dana v. Oak Park Marina, 230 A.D.2d 204, 210-11 (N.Y.A.D. 4 Dep't 1997).  Here, Plaintiff was aware of the conduct forming the basis of his claim since 2007, when the removal proceedings were instituted against him.  This suit was not filed until June 30, 2010, three years later.  (Docket No. 1.)

Judge Foschio reasoned that the negative impact of Plaintiff's ouster from the Board is "continuing and unresolved" and "arguably continues to impact Plaintiff to the present, such that the one-year limitations period has yet to commence running." (R&R at 39.) This Court disagrees.  Although "continuous and coercive harassment *can* establish an IIED cause of action," Neufeld v. Neufeld, 910 F.Supp. 977, 984 (S.D.N.Y. 1996) (emphasis in original) (citing cases), that is not what is alleged here.  Instead, the allegations in the Complaint reveal that the conduct causing Plaintiff's alleged distress  – namely, his removal from the Board for official misconduct – occurred in 2007.   After that, no more "extreme" conduct by Defendants is alleged until the 2009 and 2010 School Board campaigns.  Assuming the truth of the allegations, this is far from "continuous and coercive harassment" warranting a tolling of the limitations period with respect to Plaintiff's removal from the Board.  Cf. Alexander v. Unification Church of Am., 634 F.2d 673, 678-79 (2d Cir. 1980) (filing of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes), abrogated on other grounds by Curiano v. Suozzi, 63 N.Y.2d 113, 480 N.Y.S.2d 466 (1984); Green v. Fischbein Olivieri Rozenholc & Badillo, 119 A.D.2d 345, 507 N.Y.S.2d 148 (N.Y.A.D. 1st Dep't 1986) (baseless eviction proceedings against plaintiff by landlord, disruption in services, deterioration of living conditions, interference with mail, verbal abuse of plaintiff).

Moreover, even assuming, as Judge Foschio concluded, that Plaintiff's reinstatement to the Board on appeal to the state commissioner of education was not a full vindication of Plaintiff's reputation and therefore did not fully alleviate his distress, it is not the duration of the plaintiff's distress that determines whether the statute of limitations is tolled.   Rather, the "continuing violation" doctrine applies only when the defendant's

23

conduct is continuing in nature.  <u>Neufeld</u>, 910 F.Supp. at 982-83.  Were it otherwise, a plaintiff could easily avoid the statute of limitations by alleging ongoing emotional distress, regardless of when the defendant's conduct occurred.

Arguably, the statute of limitations does not bar an intentional infliction of emotional distress claim based on the conduct allegedly taking place during the 2010 election campaign.  However, Plaintiff asserts only that Defendants distributed "false postcards, fliers, and a website advising voters not to vote for Plaintiff," and perhaps directed the School Board's attorney to send similarly-worded letters to voters. (Compl. ¶¶ 57-60.) This fails to aver the sort of extreme and outrageous conduct required to state an intentional infliction of emotional distress claim.  <u>See</u> <u>Duane v. Prescott</u>, 134 A.D.2d 560, 561, 521 N.Y.S.2d 459 (N.Y.A.D. 2 Dep't 1987) ("The tort of intentional infliction of emotional distress is predicated upon extreme and outrageous conduct which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society"; finding political candidate failed to state a claim for intentional infliction of emotional distress based on statements made by a rival candidate during campaign).

Finally, this Court disagrees with Judge Foschio's conclusion that Plaintiff has stated a claim for defamation based on Defendants' statements during the 2010 campaign.  The Complaint, which was drafted by counsel, asserts claims for malicious prosecution (third cause of action) and intentional infliction of emotional distress (fourth cause of action). Even reading the Complaint liberally, it does not state a cause of action for defamation. Moreover, having filed two defamation suits in state court against some of the same defendants as are named here, Plaintiff was well aware of his right to assert such a claim in this case.  This Court will decline to adopt Judge Foschio's R&R insofar as it

24

recommends allowing a defamation claim based on Defendants' conduct in 2010.

## IV.  CONCLUSION

For the foregoing reasons, this Court will adopt the recommendation of Judge Foschio that Defendant Schaubert's motion to dismiss be denied with respect to the claims against him under § 1983 – for violating Plaintiff's right to procedural due process and for First Amendment retaliation – based on Defendant Schaubert's alleged conduct in procuring Plaintiff's removal from the School Board in 2007.   This court also will adopt Judge Foschio's recommendation that the malicious prosecution claim be dismissed.  In all other respects, this Court will set aside Judge Foschio's recommendations.  Aside from the § 1983 claim against Defendant Schaubert (and the School District), for violations of procedural due process and for First Amendment retaliation, based on Plaintiff's removal from the School Board,[10] all other claims against all Defendants will be dismissed.

---

[10]Defendant School District has not argued that it cannot be held liable for the conduct of the individual Defendants, including Defendant Schaubert, on a *respondeat superior* theory of liability.  As such, this question remains unresolved, and Defendant School District will not be dismissed from the case at this time.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Report and Recommendation of the Honorable Leslie G. Foschio, United States Magistrate Judge, (Docket No. 19) is ADOPTED in PART and SET ASIDE in PART.

FURTHER, that Defendant School District's Motion to Dismiss (Docket No. 11) is GRANTED in PART and DENIED in PART.  The motion is DENIED for the § 1983 claim based on Defendant Schaubert's conduct, but is GRANTED with respect to all other causes of action.

FURTHER, that Defendant Schaubert's Motion to Dismiss (Docket No. 14)  is DENIED in PART and GRANTED in PART.  The motion is DENIED with respect to the § 1983 claim, but is GRANTED with respect to all other claims.

FURTHER, that the motions of Defendants Palmeri, Laub, and Mezhir (Docket No. 14) are GRANTED.  Those Defendants are hereby DISMISSED from this case.

FURTHER, that the remaining parties are to report to Magistrate Judge Foschio for further proceedings in this case.

SO ORDERED.


Dated:        December 20, 2011
              Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court

26